## No. 15-16909

# In the
# United States Court of Appeals
## for the Ninth Circuit

DOE I, DOE II, IVY HE, DOE III, DOE IV, DOE V, DOE VI, CHARLES LEE, ROE VII, ROE VIII, LIU GUIFU, DOE IX, WEIYU WANG, and those individuals similarly situated,

*Plaintiffs-Appellants,*

v.

CISCO SYSTEMS, INC., JOHN CHAMBERS, FREDY CHEUNG aka Zhang Sihua, and DOES 1-100,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California, San Jose, No. 5:11-cv-02449-EJD.
The Honorable **Edward J. Davila**, Judge Presiding.

## AMICUS CURIAE BRIEF OF FORMER U.S. AMBASSADOR-AT-LARGE FOR WAR CRIMES ISSUES DAVID J. SCHEFFER IN SUPPORT OF APPELLANTS AND REVERSAL

WILLIAM J. ACEVES
*(Counsel of Record)*
California Western School of Law
225 Cedar Street
San Diego, CA 92101
(619) 515-1589
wja@cwsl.edu

*Counsel for Amicus Curiae David J. Scheffer*

 COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

INTEREST OF *AMICUS CURIAE* ............................................................................1

SUMMARY OF ARGUMENT ..................................................................................3

ARGUMENT ...............................................................................................................4

I.  THE MENS REA STANDARD FOR AIDING AND ABETTING
    UNDER BOTH CUSTOMARY INTERNATIONAL LAW AND THE
    ROME STATUTE OF INTERNATIONAL CRIMINAL COURT
    IS KNOWLEDGE ...........................................................................................4

    A.  The Mens Rea Standard For Aiding And Abetting Under
        Customary International Law is Knowledge.........................................5

    B.  The Mens Rea Standard for Aiding and Abetting Under the Rome
        Statute of the International Criminal Court is Knowledge .................10

    C.  Recent Scholarly Review and Clarification Affirms that the Mens Rea
        Standard for Aiding and Abetting Under the Rome Statute of the
        International Criminal Court is Knowledge .......................................16

II.  THE ACTUS REUS STANDARD FOR AIDING AND ABETTING
     UNDER CUSTOMARY INTERNATIONAL LAW IS A
     SUBSTANTIAL MEANS STANDARD ONLY .........................................20

CONCLUSION ........................................................................................................22

CERTIFICATE OF COMPLIANCE......................................................................25

CERTIFICATE OF SERVICE ..............................................................................26

i

# TABLE OF AUTHORITIES

## Federal Cases

*Aziz v. Alcolac*,
  658 F3d 388 (4th Cir. 2011)...................................................6

*Bowoto v. Chevron Corp.*,
  No. C99-02506 SI, 2006 WL 2455752 (N.D. Cal. Aug. 22, 2006).......................6

*Cabello v. Fernández-Larios*,
  402 F.3d 1148 (11th Cir. 2005) ...................................................6

*Doe v. Exxon Mobil Corp.*,
  654 F.3d 11 (D.C. Cir. 2011),
  *vacated on other grounds*,
  527 F. App'x 7 (D.C. Cir. 2013) ...................................................6

*Doe v. Saravia*,
  348 F. Supp. 2d 1112 (E.D. Cal. 2004) ...................................................6

*John Doe I, et al. v. Nestle USA, et al.*,
  766 F.3d 1013 (9th Cir. 2014),
  cert. denied, U.S. 562 (U.S. Jan. 11, 2016) (No. 15-349).......................5

*Kiobel v. Royal Dutch Petroleum Co.*,
  621 F.3d 111 (2nd Cir. 2010) ...................................................6

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
  582 F.3d 244 (2nd Cir. 2009) ...................................................6

## International Cases

*Co-Prosecutors v. Kaing Guek Eav*,
  Case No. 001/18-07-2007/ECCC/TC, Judgement (July 26, 2010),
  *aff'd*, 001/18-07-2007-ECCC/SC (Feb. 3, 2012)...................................................7

*Co-Prosecutors v. Nuon Chea and Khieu Samphan*
  Case No. 002/19-09-2007/ECCC/TC, Judgement (Aug. 7, 2014) .......................7

*Prosecutor v. Blaškić,*
Case No. IT-95-14-A, Judgement (Int'l Crim. Trib. for
the former Yugoslavia July 29, 2004) ...................................................7

*Prosecutor v. Blé Goudé* (*Blé Goudé*),
Case No. ICC-02/11-2/11, Decision on the Confirmation of
Charges Against Charles Blé Goudé (Dec. 11, 2014) .............................13, 14, 16

*Prosecutor v. Furundžija,*
Case No. IT-95-17/1-T, Judgement (Int'l Crim. Trib.
for the former Yugoslavia Dec. 10, 1998) ...........................................7

*Prosecutor v. Mrkšić,*
Case No. IT-95-13/1-A, Judgement (Int'l Crim. Trib.
for the former Yugoslavia May 5, 2009) ...........................................7

*Prosecutor v. Ntakirutimana,*
Cases No. ICTR-96-10-A and ICTR-96-17-A,
Judgement (Dec. 13, 2004) .........................................................16

*Prosecutor v. Orić,*
Case No. IT-03-68-A, Judgement (Int'l Crim. Trib.
for the former Yugoslavia July 3, 2008) .............................................7

*Prosecutor v. Perišić,*
Case No. IT-04-81-A, Judgement (Int'l Crim. Trib. For
the former Yugoslavia Feb. 28, 2013) ...............................................8

*Prosecutor v. Śainović,*
Case No. IT-05-87-A, Judgement (Int'l Crim. Trib.
for the former Yugoslavia Jan. 23, 2014) ...........................................7, 22

*Prosecutor v. Stanisťć and Simatović,*
Case No. IT-03-69-A, Judgement (Int'l Crim. Trib.
for the former Yugoslavia Dec. 9, 2015) .............................................7, 10, 21, 22

*Prosecutor v. Taylor,*
Case No. SCSL-03-01-T, Judgement (May 30, 2012) ................................7, 9, 10

*Prosecutor v. Vujadin Popović,*
   Case No. IT-05-88-A, Judgement (Int'l Crim. Trib.
   for the former Yugoslavia Jan. 30, 2015) .......................................................7, 8, 9


**Rules, Statutes and Other Authorities**

28 U.S.C. § 1350 ...........................................................................................3

*Amicus Curiae* Brief of David J. Scheffer in Support of Appellants' Opposition to
Petition for Rehearing and Rehearing *En Banc*, *John Doe I, et al. v. Nestle, U.S.A.,
et al.*, No. 10-56739 (9th Cir. Dec. 19, 2014)..................................................2, 3, 11

Brief of David J. Scheffer as *Amicus Curiae* in Support of Appellants and
Reversal, *John Doe I, et al. v. Nestle, U.S.A., et al.*, No. 10-56739 (9th Cir. July 1,
2011) ..............................................................................................................2

David Scheffer & Caroline Kaeb, *The Five Levels of CSR Compliance: The
Resiliency of Corporate Liability Under the Alien Tort Statute and the Case
for a Counterattack Strategy in Compliance Theory*, 29 BERKELEY J.
INT'L LAW 334 (2011) ................................................................... 11, 12, 13

Fed. R. App. P. 29 ........................................................................................1

*The Important New Orthodoxy on Complicity in the ICC Statute*
(January 21, 2015), *available at* http://jamesgstewart.com/
the-important-new-orthodoxy-on-complicity-in-the-icc-statute/ ..........16, 17, 18, 19

Rome Statute of the International Criminal Court, adopted July 17, 1998,
2187 U.N.T.S. 19, *available at* http://www.icc-cpi.int/
iccdocs/PIDS/publications/RomeStatutEng.pdf ........................................................1

Rome Statute of the International Criminal Court, Article 25, adopted July 17,
1998, 2187 U.N.T.S. 19, *available at* http://www.icc-cpi.int/
iccdocs/PIDS/publications/RomeStatutEng.pdf ........................................................4

Rome Statute of the International Criminal Court, Article 25(3)(c), adopted July
17, 1998, 2187 U.N.T.S. 19, *available at* http://www.icc-cpi.int/
iccdocs/PIDS/publications/RomeStatutEng.pdf ............................................*passim*

iv

Rome Statute of the International Criminal Court, Article 30, adopted July 17, 1998, 2187 U.N.T.S. 19, *available at* http://www.icc-cpi.int/ iccdocs/PIDS/publications/RomeStatutEng.pdf ...........................................4, 12, 23

Rome Statute of the International Criminal Court, Article 30(2)(b), adopted July 17, 1998, 2187 U.N.T.S. 19, *available at* http://www.icc-cpi.int/ iccdocs/PIDS/publications/RomeStatutEng.pdf ....................................................12

Thomas Weigend, *How to Interpret Complicity in the ICC Statute*, (Dec. 15, 2014), *available at* http://jamesgstewart.com/how-to-intepret-complicity-in-the-icc-statute/ ...........................................................................19, 20

## INTEREST OF *AMICUS CURIAE*

David J. Scheffer is the Mayer Brown/Robert A. Helman Professor of Law and Director, Center for International Human Rights at Northwestern University Pritzker School of Law, where he teaches international criminal law and international human rights law. He submits this *amicus curiae* brief pursuant to a motion for leave under Fed. R. App. P. 29 after having sought consent from all parties.[1]  Counsel for Plaintiffs-Appellants were contacted and consented to the filing of this brief.  Counsel for Defendants-Appellees were also contacted but took no position on the filing of this brief.

David J. Scheffer served as U.S. Ambassador-at-Large for War Crimes Issues (1997–2001) and was deeply engaged in the policy formulation, negotiations, and drafting of the constituent documents governing the International Criminal Court. He led the U.S. delegation that negotiated the Rome Statute of the International Criminal Court, adopted July 17, 1998, 2187 U.N.T.S. 19, *available at* http://www.icc-cpi.int/iccdocs/PIDS/publications/RomeStatutEng.pdf (hereinafter "Rome Statute"), and its supplemental documents from 1997 to 2001. He was deputy head of the delegation from 1995 to 1997. On behalf of the U.S. Government, he also negotiated the statutes of, and coordinated support for, the

---

[1] No counsel for any party authored this brief in whole or in part, and no person or entity, other than the *amicus curiae*, made a monetary contribution to the preparation or submission of this brief.

International Criminal Tribunals for the former Yugoslavia (ICTY) and Rwanda (ICTR), the Special Court for Sierra Leone (SCSL), and the Extraordinary Chambers in the Courts of Cambodia (ECCC) (together with the International Criminal Court, hereinafter the "tribunals").

Ambassador Scheffer submits this brief to demonstrate that the additional evidence presented by the Plaintiffs-Appellants in this case pertaining to complicity with such atrocity crimes as persecution, torture, and other abuses against Falun Gong believers in China should be examined under the rules of customary international law for aiding and abetting, which have long been affirmed in the jurisprudence of the tribunals, including recent judgments, and under an aiding and abetting standard that is compatible with the Rome Statute.

Ambassador Scheffer previously filed two *amicus curiae* briefs in the *Doe v. Nestle* litigation before this Circuit, both of which are relevant to the Plaintiffs-Appellants' appeal in this case. *See* Brief of David J. Scheffer as *Amicus Curiae* in Support of Appellants and Reversal, U.S. Court of Appeals of the Ninth Circuit, *John Doe I, John Doe II; John Doe III; individually and on behalf of proposed class members; Global Exchange v. Nestle, U.S.A., Inc., Archer Daniels Midland Company; Cargill Incorporated Company; Cargill Cocoa*, No. 10-56739 (1 July 2011) (*Nestle Amicus Brief I*); *Amicus Curiae* Brief of David J. Scheffer in Support of Appellants' Opposition to Petition for Rehearing and Rehearing *En Banc*, U.S.

Court of Appeals for the Ninth Circuit, *John Doe I, John Doe II; John Doe III; individually and on behalf of proposed class members; Global Exchange v. Nestle, U.S.A., Inc., Archer Daniels Midland Company; Cargill Incorporated Company; Cargill Cocoa*, No. 10-56739 (19 December 2014) (*Nestle Amicus Brief II*). In a similar vein, this submission is offered to elucidate the mens rea and actus reus standards for aiding and abetting liability under customary international law and under the Rome Statute.

## SUMMARY OF ARGUMENT

In *Amicus's* view, the district court committed a series of errors, factual and legal, that merit review and reversal and that one anticipates will be fully briefed by the Plaintiffs-Appellants. This brief is submitted on the limited issues regarding the appropriate tests to be applied in determining if a complaint adequately makes a case for accessorial liability under the Alien Tort Statute (28 U.S.C. §1350). At its core, these issues concern whether (a) the "knowledge" standard or the "purpose" standard is applicable for the mens rea of aiding and abetting; and (b) whether the actus reus of aiding and abetting is assessed under the substantial means standard or whether it requires the alleged wrongdoer to have engaged in planning or specific direction. The district court left undecided these issues, concluding that under any standard the Plaintiffs-Appellants had not made out a

3

sufficient case in their complaint. Assuming this Court reverses that conclusion, it is manifestly warranted that the Circuit then resolve these issues.

Both customary international law and the Rome Statute apply the knowledge standard for mens rea and the substantial means standard for actus reus, and such actus reus is sometimes explicitly defined by the tribunals as requiring a mens rea of knowledge only. This case presents an opportunity for the Court of Appeals to confirm the knowledge standard, thus obviating any examination into whether the evidence supports the heightened purpose standard, and to confirm the substantial means standard for aiding and abetting without any requirement for a finding of specific direction.

## ARGUMENT

## I. THE MENS REA STANDARD FOR AIDING AND ABETTING UNDER BOTH CUSTOMARY INTERNATIONAL LAW AND THE ROME STATUTE OF THE INTERNATIONAL CRIMINAL COURT IS KNOWLEDGE

The mens rea standard for aiding and abetting as a mode of participation under customary international law is the knowledge standard, which also exists under the Rome Statute as set forth in its provisions relating to individual criminal responsibility (Article 25) and the mental element (Article 30).

4

## A.  The Mens Rea Standard for Aiding and Abetting Under Customary International Law is Knowledge

This Circuit has declined to decide whether it is bound as a matter of law to apply either a knowledge standard or "the more stringent purpose standard" to aiding and abetting liability.

> Here, we need not decide whether a purpose or knowledge standard applies to aiding and abetting [Alien Tort Statute] claims. We conclude that the Plaintiffs-Appellants' allegations satisfy the more stringent purpose standard, and therefore state a claim for aiding and abetting slavery. All international authorities agree that "*at least* purposive action . . . constitutes aiding and abetting[.]" *Sarei*, 671 F.3d at 765-66 (declining to determine whether the mens rea required for an aiding and abetting claim is knowledge or purpose).

*John Doe I, et al. v. Nestle USA, et al.*, 766 F.3d 1013, 1024 (9th Cir. 2014), cert. denied, U.S. 562 (U.S. Jan. 11, 2016) (No. 15-349) (*Nestle*).  In this case, the district court declined to decide the choice-of-standard issue.  Instead it opted, in the first instance, to use the more lenient knowledge standard and then found that the complaint was insufficient to sustain aiding and abetting liability under *either* the knowledge standard or the purpose standard.   (Order Den. Pls.' Mot. for Recons., at 6-7, Aug. 31, 2015, ECF No. 163)

In this and other similar litigation, the Plaintiffs-Appellants bear the burden to establish aiding and abetting by the Defendants-Appellees.  Given the confusion and inconsistencies among district courts within the Circuit, as reflected most clearly in the inability of the court below to predict the appropriate standard, this

5

Court should elect the standard under which the exercise is undertaken. The D.C. Circuit and the 11th Circuit have affirmed the knowledge standard. *See, e.g.*, *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 39 (D.C. Cir. 2011), *vacated on other grounds*, 527 F. App'x 7 (D.C. Cir. 2013); *Cabello v. Fernández-Larios*, 402 F.3d 1148, 1158–59 (11th Cir. 2005). The 2nd and 4th Circuits have invoked the purpose standard. *See, e.g., Aziz v. Alcolac*, 658 F3d 388, 399-401 (4th Cir. 2011); *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 158 (2nd Cir. 2010); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 259 (2nd Cir. 2009). The circuit split on the mens rea standard for aiding and abetting should not detract this Circuit from settling on a standard that, with certainty, can be applied not only in this case but also future cases, particularly those arising under the Alien Tort Statute, when aiding and abetting liability is claimed.

The Court is already guided by its own decision in *Nestle* as described above and by how the district court in this case acknowledged both the knowledge and purpose standards. Order Granting Defs.' Mot. to Dismiss, at 12-13, Sept. 5, 2015, ECF No. 153. Other district courts in the Circuit have opted to use the knowledge standard. *See, e.g., Bowoto v. Chevron Corp.*, No. C99-02506 SI, 2006 WL 2455752, at *17–19 (N.D. Cal. Aug. 22, 2006); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1148–49 (E.D. Cal. 2004).

Customary international law applies the knowledge standard for the mens rea of aiding and abetting. This standard has been confirmed repeatedly by the tribunals; the most recent acceptance of that standard was issued in December 2015. *Prosecutor v. Stanisïć and Simatović (Stanisïć)*, Case No. IT-03-69-A, Judgement, ¶¶ 104-107 (Int'l Crim. Trib. for the former Yugoslavia Dec. 9, 2015). *See also Prosecutor v. Vujadin Popović* (*Vujadin Popović*), Case No. IT-05-88-A, Judgement, ¶¶ 1732, 1758 (Int'l Crim. Trib. for the former Yugoslavia Jan. 30, 2015); *Co-Prosecutors v. Nuon Chea and Khieu Samphan* Case No. 002/19-09-2007/ECCC/TC, Judgement, ¶ 704 (Aug. 7, 2014); *Prosecutor v. Śainović* (*Śainović*), Case No. IT-05-87-A, Judgement, ¶¶ 1772 (Int'l Crim. Trib. for the former Yugoslavia Jan. 23, 2014); *Prosecutor v. Taylor*, Case No. SCSL-03-01-T, Judgement, ¶¶ 486–87 (May 30, 2012)(*Taylor*); *Co-Prosecutors v. Kaing Guek Eav*, Case No. 001/18-07-2007/ECCC/TC, Judgement, ¶ 535 (July 26, 2010), *aff'd*, 001/18-07-2007-ECCC/SC (Feb. 3, 2012); *Prosecutor v. Mrkšić*, Case No. IT-95-13/1-A, Judgement, ¶ 159 (Int'l Crim. Trib. for the former Yugoslavia May 5, 2009); *Prosecutor v. Orić*, Case No. IT-03-68-A, Judgement, ¶ 43 (Int'l Crim. Trib. for the former Yugoslavia July 3, 2008); *Prosecutor v. Blaškić*, Case No. IT-95-14-A, Judgement, ¶ 49 (Int'l Crim. Trib. for the former Yugoslavia July 29, 2004); *Prosecutor v. Furundžija*, Case No. IT-95-17/1-T, Judgement, ¶ 245 (Int'l Crim. Trib. for the former Yugoslavia Dec. 10, 1998). Though an outlier judgment

7

by one Appeals Chamber of the ICTY (*Prosecutor v. Perišić*, Case No. IT-04-81-A, Judgement, ¶ 48 (Int'l Crim. Trib. for the former Yugoslavia Feb. 28, 2013)) employed the purpose standard, subsequent decisions refuse to adhere to it; instead, several Appeals Chambers of the ICTY and other tribunals, such as the SCSL and ECCC, that have considered cases concerning aiding and abetting have firmly and expressly rejected *Perišić*'s approach.

The ICTY Appeals Chamber's judgment in *Vujadin Popović*, cited above, explicitly rejected any "specific direction" element of aiding and abetting liability and instead invoked the "knowledge" standard for the mens rea of aiding and abetting liability. Affirming the convictions of five Bosnian Serbs for atrocity crimes committed at Srebrenica in 1995, the Appeals Chamber stated:

> 1732. [T]he actus reus for aiding and abetting "consists of practical assistance, encouragement, or moral support which has a substantial effect on the perpetration of the crime" and the mens rea requires "knowledge that these acts assist the commission of the offense." The mens rea also requires that the aider and abettor was aware of the essential elements of the crime which was ultimately committed, including the intent of the principal perpetrator. It is not necessary that the aider and abettor know the precise crime that was intended and was in fact committed—if he is aware that one of a number of crimes will probably be committed, and one of those crimes is committed, he has intended to facilitate the commission of that crime, and is guilty as an aider and abettor.
> …
>
> 1758. "'[S]pecific direction' is not an element of aiding and abetting liability under customary international law." The . . . * * * actus reus of aiding and abetting "consists of practical assistance, encouragement, or moral support which has a substantial effect on the

8

perpetration of the crime" and the mens rea is "the knowledge that these acts assist the commission of the offense." The Appeals Chamber therefore dismisses Pandurević's argument to incorporate a requirement of specific direction in the mens rea or the actus reus for aiding and abetting. Accordingly, the Appeals Chamber also dismisses Pandurević's argument that it was required that his failure to act was purposeful.

*Vujadin Popović*, ¶¶ 1732, 1758 (footnotes omitted). This holding also is relevant to the discussion about the actus reus standard for aiding and abetting below.

In *Taylor*, the SCSL Appeals Chamber wrote:

486. The mental elements of aiding and abetting require that:

i. The accused performed an act with the knowledge that such act would assist the commission of a crime or underlying offence, or that he was aware of the substantial likelihood that his acts would assist the commission of underlying offence; and

ii. The Accused is aware of the essential elements of the crime committed by the principal offender, including the state of mind of the principal offender.

487. Although the lending of practical assistance, encouragement, or moral support must itself be intentional, the intent to commit the crime or underlying offence is not required. Instead, the Accused must have knowledge that his acts or omissions assist the perpetrator in the commission of the crime or underlying offence. Such knowledge may be inferred from the circumstances. The Accused must be aware, at a minimum, of the essential elements of the substantive crime or underlying offence for which he is charged with responsibility as an aider and abettor. The requirement that the aider and abettor need merely know off the perpetrator's intent – and need not share it – applies equally to specific-intent crimes or underlying offences such as persecution as a crime against humanity.

9

*Taylor*, Case No. SCSL-03-01-T at ¶¶ 486-87 (footnotes omitted). Last month, in December 2015, the ICTY Appeals Chamber in *Stanišić* cited a long list of precedents for the knowledge standard (*Stanišić*, ¶ ¶ 378-384) and reaffirmed the reasoning in *Vujadin Popović* above.

In sum, the knowledge standard is firmly entrenched in the decisions of tribunals, which most closely deal with issues similar to those raised in Alien Tort Statute litigation and also reflect the current status of customary international law. It is therefore the standard that the Ninth Circuit should confirm in this case (and for other Alien Tort Statute cases) when examining the evidence pertaining to alleged aiding and abetting by the Defendants-Appellees.

**B. The Mens Rea Standard for Aiding and Abetting Under the Rome Statute of the International Criminal Court is Knowledge**

At the outset, it remains surprising that a U.S. federal court would rely heavily on the Rome Statute, which the U.S. has not ratified, for guidance on the interpretation of aiding and abetting liability, particularly when more authentic guidance is found in federal common law, which for cases of this character is informed by customary international law that has been shaped by the rich body of jurisprudence of the ICTY, ICTR, SCSL, and ECCC, particularly in recent years.

But putting aside the issue of what weight the Rome Statute should bring to bear on these legal issues, it is also clear that some of the conclusions drawn by

some interpreters of that Statute – that customary international law requires a more stringent test than the Plaintiffs-Appellants argued in the instant case – are incorrect.  As the U.S. Government's lead Rome Statute negotiator, I explained in *Nestle Amicus Briefs I and II* and in scholarship that the term "purpose" in Article 25(3)(c) of the Rome Statute embodies a compromise on aiding and abetting liability and does not necessarily reflect customary international law.[2]

> The negotiating history of Article 25(3)(c) demonstrates that there was no definitive agreement pointing to either an intention standard or a knowledge standard with respect to aiding and abetting liability. The compromise "purpose" language chosen for Article 25(3)(c) reflects the obvious point that an aider or abettor purposely acts in a manner that has the consequence of facilitating the commission of a crime. The aider or abettor's intention in so acting, however, cannot be established without reference to the mens rea principles set forth in Article 30 of the Rome Statute.

*Nestle Amicus Brief II at* 3-4.  Even under the Rome Statute the aider and abettor need not share in the perpetrator's intent, and certainly not a specific intent that the underlying crime be committed.  It is appropriate and legally justified that the aider and abettor be held criminally liable for his or her intentional act that assists or facilitates the crime, so long as the aider or abettor knows that the crime may be facilitated as a consequence of such action.  In other words, the Rome Statute does *not* require specific intent or direction for aiding and abetting.  Rather, it requires

---

[2] *See* David Scheffer & Caroline Kaeb, *The Five Levels of CSR Compliance: The Resiliency of Corporate Liability Under the Alien Tort Statute and the Case for a Counterattack Strategy in Compliance Theory*, 29 BERKELEY J. INT'L LAW 334, 348–357 (2011).

that the alleged perpetrator *intends to facilitate* the commission of the crime and acts with the *knowledge* that the consequence will occur in the ordinary course of events.

The mens rea standard for aiding and abetting liability in the Rome Statute is captured in Article 30 ("Mental Element") which requires that "[i]n relation to a consequence, that person means to cause that consequence *or* is aware that it will occur in the ordinary course of events." (Rome Statute, art. 30(2)(b) (emphasis added)). I explained the relationship between Article 25(3)(c) and Article 30 of the Rome Statute at length in prior scholarship, an extract of which is recited below:

> During the Rome Statute negotiations, drafters did not relegate aiding and abetting to the first prong of this formulation – "means to cause that consequence" – that would have injected a shared intention standard into aiding and abetting. Rather, in the language of Article 30(2)(b) of the Rome Statute, the intent of the aider or abettor is logically discovered within the awareness of the "consequence," namely that he or she who aids or abets is someone who "is aware that [the consequence] will occur in the ordinary course of events."

> Article 25(3)(c)'s opening phrase, "For the purpose of facilitating the commission of such a crime," was agreed to in Rome during the final negotiations as an acceptable compromise phrase to resolve the inconclusive talks over whether to use the word "intent" or the word "knowledge" for this particular mode of participation. The "purpose" language stated the de minimus and obvious point, namely, that an aider or abettor purposely acts in a manner that has the consequence of facilitating the commission of a crime, *but one must look to Article 30(2)(b) for guidance on how to frame the intent of the aider or abettor with respect to that consequence*.

David Scheffer & Caroline Kaeb, *The Five Levels of CSR Compliance: The*

12

*Resiliency of Corporate Liability Under the Alien Tort Statute and the Case for a Counterattack Strategy in Compliance Theory*, 29 BERKELEY J. INT'L LAW 334, 355 (2011) (footnotes omitted) (emphasis added).  Thus, strictly for purposes of the Rome Statute, the aider and abettor can either intend to cause the underlying crime *or* be aware that it will occur in the ordinary course of events.  The latter formulation reflects the knowledge standard.  This formula works best for the International Criminal Court, as the nature of the activities and of grievous harm rendered this compromise position most appropriate to reach the full range of wrongdoers and include a fuller scope of deliberate acts of aiders and abettors.

On December 11, 2014, the Pre-Trial Chamber of the International Criminal Court explained the requirements of aiding and abetting under the Rome Statute:

> Article 25(3)(c) of the Statute provides for individual criminal responsibility if a person, for the *purpose of facilitating* the commission of a crime within the jurisdiction of the Court, "aids, abets or otherwise assists in its commission or its attempted commission, including providing the means for its commission". In essence, what is required for this form of responsibility is that the person provides assistance to the commission of a crime and that, in engaging in this conduct, he or she *intends to facilitate* the commission of the crime.

*Prosecutor v. Blé Goudé* (*Blé Goudé*), Case No. ICC-02/11-2/11, Decision on the Confirmation of Charges Against Charles Blé Goudé, ¶ 167 (Dec. 11, 2014) (emphasis added).  Based on this interpretation of aiding and abetting liability, the Pre-Trial Chamber confirmed the charges against Charles Blé Goudé on aiding and

abetting and concluded that his actions "were intentional and were performed for the purpose of *facilitating* the commission of the crimes. In addition, they were performed in the *knowledge* that the crimes were committed as part of a widespread and systematic attack against the civilian population, namely known or perceived supporters of [his political opponent]." *Id.* ¶ 170. (emphasis added)

This is emphatically *not* a determination that the Rome Statute requires specific intent to commit the crime for aiding and abetting liability. Rather, it requires that the aider and abettor act with the understanding and deliberate purpose that his of her acts may *facilitate* the commission of the crime. Nothing in the Pre-Trial Chamber's jurisprudence suggests that the aider and abettor must share either the perpetrator's intent or specific intent to commit the particular crime. The Pre-Trial Chamber interpreted "purpose" to mean "intent to facilitate" the commission of the crime, not the specific intent to commit the underlying crime.[3]

The judges of the International Criminal Court are the authoritative arbiters of the Rome Statute. As the arbiters, in *Blé Goudé* the Pre-Trial Chamber aligned

---

[3] Nor does the partly dissenting opinion contradict the majority's understanding of aiding and abetting liability. *Blé Goudé*, Case No. ICC-02/11-2/11, Partly Dissenting Opinion of Judge Christine Van den Wyngaert (Dec. 11, 2014). Indeed, in dissenting, Judge Van den Wyngaert confirms that the majority decision itself adheres to the aiding and abetting formulation set forth here.

14

its statutory interpretation closer to the jurisprudence of the other tribunals affirming the knowledge standard.

Notwithstanding *Blé Goudé,* some may insist that the Rome Statute suggests a more rigorous standard of intent ("intent to facilitate") for aiding and abetting liability than the knowledge-alone standard long required under customary international law and recently confirmed by the ICTY Appeals Chamber in *Šainović*, *Vujadin Popović*, and *Stanišić*. Even if such an argument were legally correct, that distinction only demonstrates that "intent to facilitate" is somewhat at odds with customary international law on the issue of aiding and abetting liability. If that were true, Article 25(c)(3) of the Rome Statute cannot extinguish the recognition in customary international law of the knowledge standard (as reflected in the jurisprudence of the ICTY, ICTR, SCSL, and ECCC). Indeed, the recent jurisprudence of the Pre-Trial Chamber acknowledges the long-established knowledge standard in customary international law.

One outcome is certain if the Court seeks guidance from the International Criminal Court's judges: in *Blé Goudé,* aiding and abetting liability rests on the fundamental premise that mens rea is established by an intent to facilitate the commission of a crime and an awareness, or knowledge, that a crime will occur in the ordinary course of events. The ruling in *Blé Goudé* falls far short of what has been used in the Second and Fourth Circuits, which in fact would require that

15

aiders and abettors be indistinguishable from principals ("co-perpetrators") and would extinguish accessorial liability as it is understood in domestic and customary international law, requiring instead deliberate and knowing participation in the direct commission of the crime. The Prosecutor of the International Criminal Court correctly pointed out the absurdity of any attempt to equate the intent to aid and abet with specific intent, *Blé Goudé* at 80–81, particularly where "specific intent" has a unique meaning under international criminal law in connection with the crime of genocide and the crime against humanity of persecution. *See, e.g., Prosecutor v. Ntakirutimana*, Cases No. ICTR-96-10-A and ICTR-96-17-A, Judgement, ¶¶ 500–01 (Dec. 13, 2004).

## C. Recent Scholarly Review and Clarification Affirms that the Mens Rea Standard for Aiding and Abetting Under the Rome Statute of the International Criminal Court is Knowledge

At a recent symposium convened by Allard School of Law, University of British Columbia, leading scholars of international criminal law examined the mens rea standard for aiding and abetting liability under the Rome Statute. Assistant Professor James G. Stewart, who organized the symposium, summarized the scholarly papers in *The Important New Orthodoxy on Complicity in the ICC Statute* (January 21, 2015), *available at* http://jamesgstewart.com/the-important-

16

new-orthodoxy-on-complicity-in-the-icc-statute/ [hereafter *New Orthodoxy*]. [4] Professor Stewart writes that from this "significant cross-section of experts who have worked very extensively on these topics for a large number of years, I believe their shared opinion holds great weight in this regard." *Id.*

Professor Stewart's expressed opinion itself is highly instructive here, because it reflects not just his considered view, but also that he has carefully considered and changed his view upon a closer study of the record. Professor Stewart previously interpreted Article 25(3)(c) of the Rome Statute from a perspective quite similar to those who would require a mens rea of purpose or specific intent for aiding and abetting. But he amended that interpretation following his examination of the negotiating record of the Rome Statute and the writings of legal scholars, including but not limited to those who participated in the symposium. All of these scholars reached a generally common view that the mens rea of aiding and abetting under the Rome Statute has two prongs: the reference to "purpose" in Article 25(3)(c) attaches to the act of facilitation and not to the consummated offense, and the mental element is discovered *either* in the fact that the person means to cause the consequence or is aware that it will occur in the ordinary course of events, which mirrors the knowledge standard.

---

[4] The eight scholarly papers constituting the symposium on "Complicity in the ICC Statute" can be found at http://jamesgstewart.com/list-of-previous-symposia/.

17

Professor Stewart's more detailed explanation, summarizing the views of the

scholars participating in the symposium as well as others not participating, follows:

[T]he mental element of aiding and abetting in the ICC Statute should be interpreted as requiring a *double test* that is comprised of the following *two* elements:

1. <u>As for the fact of assistance, the accomplice must purposefully do that which facilitates the crime (or attempt to do that which would facilitate the crime)</u> – The "purpose" requirement does not go to the consummated offence, it attaches to the act of facilitation. An accomplice cannot facilitate by negligence or recklessness, say by forgetfully leaving a gun on the kitchen table that someone else uses to murder a third party, but she is responsible for an international crime that requires intent (say deportation as a crime against humanity) if she purposefully supplies the weapon to the perpetrator, in the awareness that it will be used to forcibly displace civilians as part of a widespread and systematic attack in the ordinary course of events. For clarity, I use language in the heading above that deliberately steers clear of describing this requirement as "for the purpose of helping" or "for the purpose to assist", because the words "help" and "assist" often (wrongly) imply some type of disposition towards to [sic] consummated crime when, as we will see below, this language is really meant to reference the conduct that facilitates the crimes; <u>and</u>

2. <u>As for the criminal result of the facilitation (whether attempted or completed), the accomplice must have whatever mental element is announced in the crime charged.</u> Importantly, this second element arises from Art 30 of the statute, which stipulates that mental elements require intention and knowledge "unless otherwise provided" elsewhere. Thus, because Art 25(3)(c) is silent as to the mental element for consequences of an aider and abettor's assistance, we should use definitions contained in Article 30 to fill this void. After all, this is how we read all the other forms of participation in Articles 25(3)(c) through (d). Thus, because the vast majority of international crimes are silent as to the mental element, Article 30 stipulates that the accomplice is liable if "in relation to a consequence, that person

18

means to cause that consequence or is aware that it will occur in the ordinary course of events."

*Id.* (emphasis in the original)

Thomas Weigend, Professor of International, Comparative and German Criminal Law at the University of Cologne, also has rethought the mens rea standard for aiding and abetting under the Rome Statute. In the paper he submitted for the symposium, he explained:

> The [Rome] Statute speaks [in Article 25(3)(c)] of "the purpose of facilitating the commission of such a crime"; the assistant's purpose thus is not the crime but the facilitation. This means that the assistant's objective must be to facilitate the act of the main perpetrator; but her will need not encompass the result of the perpetrator's conduct. For example, if an arms trader sells weapons to a dictator, he will be punishable only if he does so with the purpose of facilitating the dictator's use of armed force; but the fact that the armed force will be used against unarmed civilians and will therefore constitute a crime against humanity need not be the arms dealer's "purpose".... In what I said so far, I assumed as true the widely shared assumption that the words "for the purpose" describe a special mental element of assisting under Art. 25(3)(c). But there is a plausible alternative reading of these words, which has been spelled out by Antje Heyer in her excellent and extensive analysis of liability for aiding and abetting in [international criminal law] (published in 2013 in German under the title *Grund und grenze de Beihifestrafbarkeit im Volkerstrafrecht*, pp. 500–01; for a similar interpretation, see Katherine Gallagher, '*Civil Litigation and Transnational Business'*, 8 JICJ 745 at 765 (2008)). "For the purpose of facilitating the commission" can also be interpreted as an element of the actus reus of assisting: the assistant's conduct must be specifically shaped in a way as to be of use to the perpetrator. Under this interpretation, conduct that is part of a person's normal business would not qualify as assistance, because that conduct would not have the objective purpose of facilitating someone's crime. If, for example, an arms trader sells weapons to a dictator at their regular price and under regular

> conditions, he would not be an assistant to crimes against humanity even if he is aware that such crimes will be committed using these weapons. But if the trader sells the weapons at a higher price because of an existing embargo, or if he sells weapons that have been specifically designed for killing civilians, he would be liable because this particular deal has been accommodated to serve the specific "purpose" of committing the crime. Under that interpretation, the regular mens rea requirements (as described in Art. 30) would apply—the arms dealer would only have to be aware of the specific elements that give the arms deal its "purpose."

Thomas Weigend, *How to Interpret Complicity in the ICC Statute*, (Dec. 15, 2014), *available at* http://jamesgstewart.com/how-to-intepret-complicity-in-the-icc-statute/.

With the supplemental evidence provided in the Plaintiffs-Appellants' Brief before this Court, the opportunity should be afforded the Plaintiffs-Appellants to rest their complaint on the mens rea standard for aiding and abetting confirmed by the tribunals and by legal scholars, namely the knowledge standard.

## II. THE ACTUS REUS STANDARD FOR AIDING AND ABETTING UNDER CUSTOMARY INTERNATIONAL LAW IS A SUBSTANTIAL MEANS STANDARD ONLY

The Plaintiffs-Appellants' Brief provides an accurate and thorough treatment of the actus reus standard for aiding and abetting. See Plaintiffs-Appellants' Brief at 9-13. Nonetheless, it might prove useful to elaborate on one point.

The substantial body of tribunal jurisprudence, with the exception of the flawed and repeatedly superseded judgment in *Perišić*, links only one mens rea

standard—knowledge—to the definition of the actus reus of aiding and abetting. This melding of the two standards in tribunal practice when examining the actus reus of aiding and abetting clouds the distinction between mens rea and actus reus, but that is how such standards are often portrayed in tribunal judgments. The resulting actus reus for aiding and abetting thus requires the substantial means standard (the magnitude of action required for aiding and abetting) be tied to a mens rea standard of knowledge, and of knowledge only. There is no suggestion that the mens rea standard applied within the actus reus standard be tightened to require an intention to commit the underlying crime. There is no leap in tribunal jurisprudence (other than in *Perišić*) that would require the mens rea of specific direction or intent such that the aider and abettor essentially becomes a co-perpetrator with shared intent.

The *Vujadin Popović* judgment, quoted above on pages 8-9, demonstrates the interplay between the mens rea and actus reus standards, emphasizing that the knowledge standard prevails and that there is no specific direction standard to apply. The ICTY Appeals Chamber in *Stanišć* held that with respect to the lower court's reliance on the generally rejected *Perišić* holding:

> [T]he Trial Chamber erred in law in requiring that the acts of the aider and abettor be specifically directed to assist the commission of a crime. This also means that the Trial Chamber erred in law in making a finding on a substantial effect of the contributing acts *contingent upon establishing specific direction* by holding that, when assessing whether the acts carried out by the aider and abettor have a substantial

21

effect on the perpetration of a crime, the Trial Chamber must find that they are specifically directed to assist that crime."

*Stanišć*, ¶ 106 (footnotes omitted) (emphasis added). The ICTY Appeals Chamber in *Śainović* extensively covered the same issue, citing to numerous prior ICTY judgments that require a substantial contribution as the element of actus reus for aiding and abetting while excluding any reference to a specific direction or intent requirement. Specific direction, the Appeals Chamber concluded in *Śainović*, is not an element of aiding and abetting liability under customary international law. *Śainović*, ¶ 1649 (A fulsome discussion of ICTY jurisprudence on aiding and abetting and the mens rea and actus reus standards can be found in *Śainović*, ¶¶ 1618-1667.)

The Court should review the evidence in this case using an actus reus standard that requires a substantial contribution by the aider and abettor and a mens rea standard of knowledge.

## CONCLUSION

In this case (1) the totality of the evidence, including new evidence, of corporate complicity by the Defendants-Appellees in the persecution, torture, and other abuses against Falun Gong believers in China provides the Court with ample reason to review such evidence, and (2) the mens rea and actus reus standards for aiding and abetting liability, particularly under customary international law,

recently have been clarified by the tribunals and by scholars such that the case should test these standards against the evidence.

Two decades of precedents from the tribunals, reinforced by the recent *Śainović*, *Vujadin Popović*, and *Stanisīć* judgments of the ICTY, confirm the "knowledge" standard for aiding and abetting liability under customary international law. The International Criminal Court recently confirmed an "intends to facilitate" standard for aiding and abetting liability that does not establish a specific intent standard.

Leading legal scholars have interpreted "purpose" in Article 25(3)(c) of the Rome Statute as attaching to the act of facilitation and not to the consummated offense. Article 30 of the Rome Statute embraces the knowledge standard as a mens rea standard for aiding and abetting in the commission of atrocity crimes falling within the jurisdiction of the International Criminal Court.

Finally, tribunal jurisprudence now has settled on the actus reus standard for aiding and abetting, excluding specific direction as a required mens rea element for the substantial means test that must be met to comply with the actus reus standard.

Dated:  January 11, 2016          Respectfully submitted,

/s/ WILLIAM J. ACEVES
California Western School of Law
225 Cedar Street
San Diego, CA  92101
619-515-1589
wja@cwsl.edu


/s/ DAVID J. SCHEFFER
Mayer Brown/Robert A. Helman Professor of Law
Center for International Human Rights
Northwestern University Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611-3069
(312) 503-2224
d-scheffer@law.northwestern.edu

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed.R.App.P. 29(d) and Fed.R.App.P. 32(a)(7)(B)(i) because this brief contains 5,901 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

In addition, this brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2003, typeface of 14 points and type style of Times New Roman.

/s/ WILLIAM ACEVES
California Western School of Law
225 Cedar Street
San Diego, CA  92101
619-515-1589
wja@cwsl.edu

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the Amicus Curiae Brief of Former U.S. Ambassador-at-Large for War Crimes Issues David J. Scheffer in Support of Appellants and Reversal with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 11, 2016.

I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ WILLIAM ACEVES
California Western School of Law
225 Cedar Street
San Diego, CA 92101
619-515-1589
wja@cwsl.edu