# No. 15-16909

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

————◆◆◆————

DOE I, DOE II, IVY HE, DOE III, DOE IV, DOE V, DOE VI, CHARLES LEE, ROE VII, ROE VIII, LIU GUIFU, DOE IX, WEIYU WANG, and those individuals similarly situated,

*Plaintiffs-Appellants,*

v.

CISCO SYSTEMS, INC., JOHN CHAMBERS, and FREDY CHEUNG,

*Defendants-Appellees.*

————————————

*On Appeal from the United States District Court*
*for the Northern District of California*
*Case No. 5:11-cv-02449 (Hon. Edward J. Davila)*

## DEFENDANTS-APPELLEES' UNOPPOSED MOTION TO STAY MANDATE PENDING FILING AND DISPOSITION OF PETITION FOR WRIT OF CERTIORARI

Isaac Nesser
Todd Anten
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Kathleen M. Sullivan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Christopher G. Michel
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street NW
Washington, DC 20005
(202) 538-8000

*Counsel for Defendants-Appellees*

September 9, 2024

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ................................3

LEGAL STANDARD ...................................................................................8

REASONS FOR STAYING THE ISSUANCE OF THE MANDATE....................9

I.    DEFENDANTS' FORTHCOMING PETITION FOR CERTIORARI WILL PRESENT SUBSTANTIAL QUESTIONS..........................................9

    A.    The Petition Will Present The Substantial Question Whether Judicially Implied Aiding-And-Abetting Liability Is Available Under The ATS In Light Of *Central Bank* ...........................................10

    B.    The Petition Will Present The Substantial Question Whether Aiding-And-Abetting Liability Is Available Under The ATS In This Case Given The Separation-Of-Powers And Foreign-Policy Limitations Imposed By *Sosa* And *Jesner*...............................12

    C.    The Petition Will Present The Substantial Question Whether Any Aiding-And-Abetting Liability Available Under The ATS Requires A *Mens Rea* Of Purpose Or Can Be Satisfied With A *Mens Rea* Of Mere Knowledge ...........................................................15

    D.    The Petition Will Present The Substantial Question Whether Aiding-And-Abetting Liability Is Available Under The TVPA ..........16

II.    THERE IS GOOD CAUSE FOR A STAY ....................................................17

CONCLUSION....................................................................................20

CERTIFICATE OF COMPLIANCE .....................................................21

CERTIFICATE OF SERVICE .................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Americans for Prosperity Found. v. Becerra*,
    Nos. 16-55727 & 16-55786 (9th Cir. Apr. 3, 2019)...............................................8

*Axon Enters, Inc. v. FTC*,
    No. 20-15662 (9th Cir. Apr. 21, 2021)...................................................8

*Aziz v. Alcolac, Inc.*,
    658 F.3d 388 (4th Cir. 2011) ...............................................15

*Bryant v. Ford Motor Co.*,
    886 F.2d 1526 (9th Cir. 1989) ...............................................8

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994).....................................................2, 6, 9, 10, 11, 16

*County of San Mateo v. Chevron Corp.*,
    Nos. 18-15499 et al. (9th Cir. June 30, 2022)......................................8

*Democratic Nat'l Comm. v. Hobbs*,
    No. 18-15845 (9th Cir. Feb. 11, 2020)..................................................8

*Doe I v. Cisco Systems, Inc.*,
    ___ F.4th ___, 2024 WL 4020025 (9th Cir. Sept. 3, 2024) ..................................1

*Doe v. Exxon Mobil Corp.*,
    654 F.3d 11 (D.C. Cir. 2011)................................................. 10, 12, 16

*Doe v. Nestlé USA, Inc.*,
    788 F.3d 946 (9th Cir. 2015)...........................................................8, 15

*Doe v. Qi*,
    349 F. Supp. 2d 1258 (N.D. Cal. 2004) .............................................14

*Egbert v. Boule*,
    596 U.S. 482 (2022).........................................................14

*Ellis v. U.S. Dist. Ct.*,
    360 F.3d 1022 (9th Cir. 2004)..................................................8

i

*Epic Games, Inc. v. Apple, Inc.*,
    73 F.4th 785 (9th Cir. 2023)..............................................................8, 10

*Jesner v. Arab Bank, PLC*,
    584 U.S. 241 (2018)........................................ 2, 5, 6, 9, 11, 12, 13, 14

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013)........................................................................4, 5

*Mohamad v. Palestinian Auth.*,
    566 U.S. 449 (2012)..........................................................................17

*Nestlé USA, Inc. v. Doe*,
    593 U.S. 628 (2021)........................................ 5, 12, 13, 14, 16

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    582 F.3d 244 (2d Cir. 2009) ............................................................15

*Sarei v. Rio Tinto*,
    No. 09-56381 (9th Cir. Nov. 9, 2011) ...............................................8

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004).................................... 2, 6, 9, 10, 11, 12, 14, 15

*United States v. Agrama*,
    No. 22-55447 (9th Cir. Nov. 3, 2023)...............................................8

*United States v. Pete*,
    525 F.3d 844 (9th Cir. 2008) ...........................................................8

**Statutes**

28 U.S.C. § 1350..............................................................................1

28 U.S.C. § 1350 (note) .............................................................1, 16

Pub. L. No. 101-246, 104 Stat. 15 (1990).........................................4

**Rules and Regulations**

9th Cir. R. 41-1.............................................................................17

15 C.F.R. § 742.7 ..............................................................................4

ii

Fed. R. App. P. 41(d)(1) ....................................................................1, 3, 8, 9, 11, 12

Sup. Ct. R. 10(a)............................................................................................16

Sup. Ct. R. 13 .................................................................................................3

## **Other Authorities**

Br. of United States as Amicus Curiae Supporting Petitioners,
   *Nestlé USA, Inc. v. Doe*, 593 U.S. 628 (Sept. 8, 2020),
   *available at* 2020 WL 5498509 ............................................................11

Letter from William H. Taft, IV, Dep't of State, to Assistant Att'y Gen. Robert D.
   McCallum, Re: *Doe v. Qi* (N.D. Cal.) (Sep. 25, 2002).......................18

**INTRODUCTION**

Pursuant to Federal Rule of Appellate Procedure 41(d)(1), Cisco Systems, Inc. ("Cisco") and two former Cisco executives (collectively, "Defendants") respectfully move for an order staying issuance of the mandate pending the filing and disposition of a petition for a writ of certiorari in the U.S. Supreme Court. Counsel for plaintiffs represented that they do not oppose this motion.

This case involves claims brought by Chinese nationals under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 (note), alleging that Defendants' sale of networking equipment to the Chinese government—which was lawful under federal regulations—aided and abetted Chinese officials' mistreatment of Falun Gong practitioners in China in violation of international law. The district court (Davila, J.) dismissed plaintiffs' claims ten years ago, but a divided panel (Berzon, J., joined by Tashima, J.) of this Court reinstated these claims in 2023 over Judge Christen's partial dissent.

On September 3, 2024, the panel denied Defendants' petition for panel rehearing by a 2-1 vote and the Court denied Defendants' petition for rehearing en banc over the dissent of seven judges. *Doe I v. Cisco Systems, Inc.*, ___ F.4th ___, 2024 WL 4020025, Dkt. 101-1 (9th Cir. Sept. 3, 2024). Six of the dissenting judges joined a 27-page opinion explaining that the Court should have granted

1

rehearing en banc on multiple grounds. *Id.* at 13-39 (Bumatay, J., joined by Callahan, Ikuta, Bennett, R. Nelson and VanDyke, JJ.).

As illustrated by the divided votes and extensive opinions at the panel and en banc rehearing stages, the issues in this case present challenging and legally significant questions. Defendants plan to file a petition for writ of certiorari seeking Supreme Court review on several of those questions, including: (1) whether judicially implied aiding-and-abetting liability is available under the ATS in light of *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994); (2) whether judicially implied aiding-and-abetting liability is available under the ATS in this case given the separation-of-powers and foreign-policy limitations imposed by *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), and *Jesner v. Arab Bank, PLC*, 584 U.S. 241 (2018); (3) whether any available aiding-and-abetting liability under the ATS requires a *mens rea* of purpose or can be satisfied with a *mens rea* of knowledge; and (4) whether aiding-and-abetting liability is available under the TVPA.

As elaborated further below, those questions have prompted disagreement within this Court and—in some cases—with other courts of appeals or judges. The Supreme Court has also noted the significance of several of the questions without deciding them, and several Justices have expressly taken positions that bear on their resolution. Indeed, the Supreme Court has granted certiorari to hear four ATS

and TVPA cases since 2011 alone, producing a collective 15 opinions wrestling with important and difficult aspects of both statutes, several of which are implicated here. In short, the issues Defendants plan to raise in their certiorari petition readily qualify as "substantial question[s]" warranting a stay of the mandate under Fed. R. App. P. 41(d)(1).

There is also "good cause for a stay." *Id.* Proceeding with this case would implicate serious foreign-policy concerns that courts should strive to avoid, and raise complex transnational, multilingual issues concerning alleged acts that took place abroad more than 20 years ago, all of which will be unnecessary if the Supreme Court agrees that plaintiffs' ATS and TVPA claims should be dismissed. A stay would also inflict no prejudice on plaintiffs but would simply preserve the status quo that has existed for nearly a decade while the case was in this Court. Defendants' unopposed motion should therefore be granted.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Relevant here, this case involves a complaint filed in 2011 invoking the ATS and TVPA against Cisco and two of its former executives, John Chambers and

---

[1] Absent a stay, the mandate of this court is scheduled to issue no earlier than September 10, 2024. Under the Supreme Court's rules, Defendants' certiorari petition currently is due by December 2, 2024. *See* Sup. Ct. R. 13. Defendants will promptly notify this Court if the time for filing their certiorari petition is extended and when the petition is filed in order that the Court may continue the stay until the Supreme Court's disposition of the petition.

Fredy Cheung.[2]  (Plaintiffs brought additional federal and state-law claims that were dismissed by the district court and plaintiffs did not appeal.)

The gravamen of the operative complaint (ER29-115) alleges that Defendants aided and abetted Chinese officials' commission of international law violations in China against Chinese practitioners of Falun Gong by selling networking equipment to Chinese law enforcement authorities more than two decades ago.  At that time of those transactions, Congress and the Commerce Department had carefully balanced the importance of ongoing trade with China with human rights concerns that arose after the events at Tiananmen Square by enacting the Foreign Relations Authorization Act for Fiscal Years 1990 and 1991, Pub. L. No. 101-246, 104 Stat. 15 (1990) (the "Tiananmen Act"), and promulgating detailed export regulations under the Act.  The regulations controlling certain exports to China for crime control reasons did *not* control exports of computer networking hardware and software.  *See* 15 C.F.R. § 742.7.  Plaintiffs' claims thus turn entirely on allegations of secondary liability: "the only way for this suit to proceed is for a federal court to adjudicate the responsibility of the Chinese

---

[2]  The initial complaint was filed May 2011, but the district court terminated Defendants' motion to dismiss that complaint in light of *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013), which at the time was pending before the Supreme Court.  ER19.  Plaintiffs filed their Second Amended Complaint in September 2013, which Defendants moved to dismiss in November 2013.  ER19. The district court granted Defendants' motion to dismiss in September 2014 (ER15-28), and denied Plaintiffs' motion for reconsideration in August 2015 (ER5-14).

Communist Party—the ruling party of China—and the Ministry of Public Security—a government ministry—for violations of international law."  En Banc Denial Statement 37; *see also* Panel Dissent 87.

The district court dismissed all of plaintiffs' claims with prejudice.  *See* ER15-28; *see also* ER5-14 (denying reconsideration).  As to the ATS, the district court ruled that plaintiffs' claims were impermissibly extraterritorial under *Kiobel*, and in any event plaintiffs failed to adequately allege the *mens rea* or *actus reus* required for ATS aiding-and-abetting liability.  ER21-27.  The district court also dismissed the TVPA claims against Chambers and Cheung on the ground that the TVPA does not provide for aiding-and-abetting liability.  ER25.

Plaintiffs appealed, and oral argument was held before Judges Reinhardt, Tashima and Berzon in April 2017.  ECF 43.  The submission of the case was then vacated twice: (1) first in May 2017 pending the resolution of *Jesner* (ECF 46); and (2) a second time in December 2018 pending this Court's en banc proceedings in *Nestlé USA, Inc. v. Doe*, 593 U.S. 628 (2021) (ECF 72), which was then maintained in August 2019 pending Supreme Court proceedings in *Nestlé* (ECF 75).  In addition, after Judge Reinhardt's passing, Judge Christen was assigned to this appeal in April 2018.  ECF 47.  A second oral argument was held before Judges Tashima, Berzon and Christen in October 2021.  ECF 88.

In a July 2023 divided decision authored by Judge Berzon and joined by Judge Tashima over the partial dissent of Judge Christen, the panel majority reversed the district court's dismissal of plaintiffs' ATS and TVPA claims. ECF 95 at 2-84 ("Panel Op."). The panel majority concluded, among other things, that: (1) the ATS allows judicial implication of a private right of action for aiding-and-abetting liability, notwithstanding *Central Bank* (Panel Op. 35-36); (2) separation of powers and international comity considerations did not favor dismissal, notwithstanding *Sosa* and *Jesner* (Panel Op. 38-35, 36-39); (3) the applicable *mens rea* standard for ATS aiding-and-abetting claims is "knowing assistance" rather than "purpose," notwithstanding contrary decisions from the Second and Fourth Circuits (Panel Op. 49-59); and (4) the TVPA recognizes aiding-and-abetting claim, notwithstanding *Central Bank* (Panel Op. 74-83).

In her partial dissent (ECF 95 at 84-93) ("Panel Dissent"), Judge Christen dissented from the reinstatement of the ATS claims against Cisco. Judge Christen noted that in the Supreme Court's "most recent decision on point," *i.e.*, *Nestlé*, "a majority of the [Supreme] Court agreed that the second step of the *Sosa* inquiry … demands that [courts] exercise judicial discretion to avoid creating foreign policy controversies." Panel Dissent 88. Judge Christen warned that "a finding of liability in this case would necessarily require a showing that the Chinese Communist Party and Ministry of Public Security violated international law with

respect to the Chinese-national Plaintiffs. Such a finding could have serious ramifications for Sino-American relations, fraught as they already are." Panel Dissent 89. Judge Christen also would have solicited the views of the United States (Panel Dissent 91-92), dissenting from the panel majority's conclusion that the absence of an uninvited amicus brief from the United States permitted it to "infer a lack of concern from the government's silence" (Panel Op. 32-43). Defendants filed a timely petition for panel and en banc rehearing. ECF 95.

On September 3, 2024, this Court issued an Order in which Judges Tashima and Berzon voted to deny the petition for panel rehearing, while Judge Christen voted to grant the petition. ECF 101-1 at 3. A vote to rehear the matter en banc was called, which failed to receive a majority of votes of nonrecused active judges. *Id.* Judge Berzon, joined by Judges Tashima and Paez, submitted a statement respecting the denial of rehearing en banc. ECF 101-1 at 3-13 ("En Banc Denial Statement"). Seven judges dissented from the denial of rehearing en banc: Judge Bumatay, joined by Judges Callahan, Ikuta, Bennet, R. Nelson and VanDyke, authored a dissent from the denial of rehearing en banc, ECF 101-1 at 13-39 ("Dissent from En Banc Denial"), and Judge Christen also dissented from the denial of rehearing en banc, ECF 101-1 at 4. This timely motion follows.

## LEGAL STANDARD

Federal Rule of Appellate Procedure 41(d)(1) provides that this Court may stay its mandate "pending the filing of a petition for a writ of certiorari in the Supreme Court" when the petition "would present a substantial question and … there is good cause for a stay." "No exceptional circumstances need be shown to justify a stay. This matter is entrusted to the circuit court's sound discretion." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989). Indeed, it is "often the case" this Court will stay mandates pending forthcoming petitions for certiorari to the Supreme Court. *United States v. Pete*, 525 F.3d 844, 850 (9th Cir. 2008).[3] This includes ATS cases. *See, e.g.*, *Doe v. Nestlé USA, Inc.*, No. 10-56739, ECF 141 (May 14, 2015) (granting motion to stay mandate pending filing of petition for writ of certiorari seeking review of ATS issues); *Sarei v. Rio Tinto*, No. 09-56381, ECF 138 (9th Cir. Nov. 9, 2011) (same).

---

[3]    *See, e.g.*, *United States v. Agrama*, No. 22-55447, ECF 50 (9th Cir. Nov. 3, 2023) (staying mandate pending petition to Supreme Court); *Epic Games, Inc. v. Apple, Inc.*, 73 F.4th 785, 785 (9th Cir. 2023) (same); *County of San Mateo v. Chevron Corp.*, Nos. 18-15499 et al., ECF 329 (9th Cir. June 30, 2022) (same); *Axon Enters, Inc. v. FTC*, No. 20-15662, ECF 58 (9th Cir. Apr. 21, 2021) (same); *Democratic Nat'l Comm. v. Hobbs*, No. 18-15845, ECF 127 (9th Cir. Feb. 11, 2020) (same); *Americans for Prosperity Found. v. Becerra*, Nos. 16-55727 & 16-55786, ECF 138 (9th Cir. Apr. 3, 2019) (same).

### REASONS FOR STAYING THE ISSUANCE OF THE MANDATE

### I. DEFENDANTS' FORTHCOMING PETITION FOR CERTIORARI WILL PRESENT SUBSTANTIAL QUESTIONS

Defendants plan to seek certiorari on at least the following questions: (1) Whether judicially implied aiding-and-abetting liability is available under the ATS in light of *Central Bank*. (2) Whether judicially implied aiding-and-abetting liability is available under the ATS in this case given the separation-of-powers and foreign-policy limitations imposed by *Sosa* and *Jesner*. (3) If aiding-and-abetting liability is available under the ATS, whether such liability requires a *mens rea* of purpose or can be satisfied with a *mens rea* of mere knowledge. (4) Whether aiding-and-abetting liability is available under the TVPA.[4]

Each of these questions provides a "substantial" basis for certiorari, Fed. R. App. P. 41(d)(1), given the divisions in authority that they implicate, their exceptional legal and practical importance, and the Supreme Court's record of reviewing significant ATS and TVPA cases. At a minimum, the Court can readily conclude that at least *one* of the questions is substantial, which suffices to stay the mandate under the text of Rule 41(d)(1) and this Court's practice. *Id.* (allowing a stay where "the petition would present *a* substantial question") (emphasis added);

---

[4] Defendants plan to file a joint petition, with Cisco addressing the ATS issues and the individual executives addressing the TVPA issues. Defendants reserve the right to revise or add questions as they continue to analyze this Court's decision and prepare their petition.

*see, e.g., Epic Games, Inc.*, 73 F.4th at 785 (M. Smith, J., concurring) (describing the Court's "general practice of granting a motion for a stay if the arguments presented therein are not frivolous"); *Ellis v. U.S. Dist. Ct.*, 360 F.3d 1022, 1023 (9th Cir. 2004) (Gould, J., dissenting) (similar).

### A. The Petition Will Present The Substantial Question Whether Judicially Implied Aiding-And-Abetting Liability Is Available Under The ATS In Light Of *Central Bank*

Cisco's certiorari petition will first present the question whether judicially implied aiding-and-abetting liability under the ATS is consistent with the Supreme Court's decision in *Central Bank*. In *Central Bank*, the Supreme Court "made crystal clear that there can be no civil aiding and abetting liability unless Congress expressly provides for it." *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 87 (D.C. Cir. 2011) (Kavanaugh, J., dissenting in part); *see Central Bank*, 511 U.S. at 182-84. For all the other disagreements in this case, it is undisputed that Congress did not expressly provide for aiding-and-abetting liability in the ATS. As in *Central Bank*, "it is not plausible to interpret the statutory silence as tantamount to an implicit congressional intent to impose … aiding and abetting liability." *Id.* at 185; *see* Dissent from En Banc Denial 34. Indeed, this is an *a fortiori* case from *Central Bank*, because the ATS—unlike the securities laws at issue in *Central Bank*—is "a jurisdictional statute creating no new causes of action" at all. *Sosa*, 542 U.S. at 724. Determining whether aiding-and-abetting liability exists under the ATS is

10

thus a matter of "federal common law," *id.* at 732, which squarely implicates the reasoning of *Central Bank*.

The panel disagreed, concluding that *Central Bank* "does not govern" the inquiry "[b]ecause ATS liability is generally determined under international law." Panel Op. 35-36. But even where an ATS plaintiff identifies an international-law norm, a court must still "determine[] *further* whether allowing th[e] case to proceed under the ATS is a proper exercise of judicial discretion" under federal common law. *Jesner*, 584 U.S. at 258 (emphasis added). That analysis necessarily includes *Central Bank*'s admonition against exercising judicial discretion to imply aiding-and-abetting liability. 511 U.S. at 182-84; *see* Dissent from En Banc Denial 30-34.

Even setting aside the merits, the deep disagreement on this issue illustrates that it "present[s] a substantial question." Fed. R. App. P. 41(d)(1). While Judge Berzon's statement for two panel members and Judge Paez reiterated the panel's position that *Central Bank* is "inapposite" and "irrelevant," En Banc Denial Statement 10-11, Judge Bumatay's dissent for six judges concluded that "*Central Bank* controls," Dissent from En Banc Denial 30. The United States, which has particular interest and expertise in construing the ATS, has also long taken the position that "aiding and abetting is not cognizable under the ATS" in light of *Central Bank*. Br. of United States as Amicus Curiae Supporting Petitioners at 8,

*Nestlé USA, Inc. v. Doe*, 593 U.S. 628 (Sept. 8, 2020), *available at* 2020 WL 5498509. Then-Judge Kavanaugh took the same position while sitting on the D.C. Circuit. *Exxon*, 654 F.3d at 85-88. And the Supreme Court in *Nestlé* discussed the significant differences of opinion on the issue, but ultimately declined to resolve them given that it decided the case on other grounds. 593 U.S. at 633-34. All of that reinforces that the issue at least "present[s] a substantial question." Fed. R. App. P. 41(d)(1).

> **B.    The Petition Will Present The Substantial Question Whether Aiding-And-Abetting Liability Is Available Under The ATS In This Case Given The Separation-Of-Powers And Foreign-Policy Limitations Imposed By *Sosa* And *Jesner***

Cisco's certiorari petition will also present the question whether allowing plaintiffs' aiding-and-abetting claims to proceed in this case can be reconciled with the separation-of-powers and foreign-policy limitations articulated in *Sosa* and *Jesner*—*i.e.*, whether permitting the claims under the ATS would "imping[e] on the discretion of the Legislative and Executive Branches," *Sosa*, 542 U.S. at 727, or otherwise "trigger[] serious foreign policy consequences," *Jesner*, 584 U.S. at 272 (quotations omitted). The deep division within the panel and this Court on this issue—as well as prior positions adopted by multiple Justices and by the State Department in a similar case—confirm that it presents a substantial question.

As elaborated by both Judge Christen's panel dissent and Judge Bumatay's dissent from the denial of rehearing en banc, the ATS claims in this case trigger

foreign-policy alarms of the highest order. Panel Dissent 87-93; Dissent from En Banc Denial 37-39. To prove their claim that Cisco's sale of lawful products to the Chinese government aided and abetting international-law violations such as torture and extrajudicial killing, plaintiffs would have to prove that *the Chinese government committed those violations*. Panel Dissent 89; Dissent from En Banc Denial 37. "Such a finding could have serious ramifications for Sino-American relations, fraught as they already are." Panel Dissent 89. Indeed, the potential foreign-policy consequences of a judicial finding that the sovereign government of "another world superpower" committed international-law violations against its own people are far weightier than the concerns the Supreme Court found compelling enough to decline to recognize ATS claims in cases like *Jesner*. Dissent from En Banc Denial 16; *see* Panel Dissent 89 ("The concerns the Court expressed in *Jesner* about holding a foreign corporation liable apply tenfold to [this] case ….").

The risk of improper judicial intrusion into foreign policy is particularly acute because the Court declined, over the objection of Judge Christen, to solicit the views of the United States. Panel Dissent 91-92. The Supreme Court—which has invited and consulted the views of the United States in prior ATS cases, *see, e.g.*, *Jesner*, 584 U.S. at 270-71; *Nestlé*, 140 S. Ct. 912 (2020)—might view the Court's refusal to do here as "rather baffling," Dissent from En Banc Denial 38.

That is particularly true given that the United States has previously cautioned against judicial recognition of an ATS action in factually similar circumstances. *Doe v. Qi*, 349 F. Supp. 2d 1258, 1296-97 (N.D. Cal. 2004); *see* Panel Dissent 92 (relying on *Qi*); Dissent from En Banc Denial 37-38 (same). Even if en banc rehearing were not warranted to solicit the government's position, *see* En Banc Denial Statement 12, the absence of the government's views makes the foreign-policy questions presented by Cisco's certiorari petition all the more substantial.

Foreign-policy concerns are not the only reason that allowing an ATS claim to proceed here would not be a "proper exercise of judicial discretion." *Jesner*, 584 U.S. at 258 (citing *Sosa*, 542 U.S. at 732-33). As detailed by Judge Bumatay, separation-of-powers concerns also weigh heavily against the judicial recognition of causes of action that Congress has declined to specify. Dissent from En Banc Denial 31-35. The Supreme Court has emphasized with increasing force that "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert v. Boule,* 596 U.S. 482, 486 (2022). Indeed, multiple Justices have signaled that courts should not recognize *any* new causes of action under the ATS beyond the three historic international-law torts identified in *Sosa*. *See Nestlé*, 593 U.S. at 639-40 (plurality opinion of Thomas, J., joined by Gorsuch and Kavanaugh, JJ.); *Sosa*, 542 U.S. at 739 (Scalia, J., concurring in part and concurring in the judgment); *see also Jesner*, 584 U.S. at 276 (Alito, J.,

concurring in part and concurring in the judgment). Although those views are not "binding" on this Court, En Banc Denial Statement 4, they are strong indicators that the Supreme Court would regard the application of *Sosa*'s second step here as a substantial question.

### C. The Petition Will Present The Substantial Question Whether Any Aiding-And-Abetting Liability Available Under The ATS Requires A *Mens Rea* Of Purpose Or Can Be Satisfied With A *Mens Rea* Of Mere Knowledge

Cisco's certiorari petition will also present the question which *mens rea* standard—purpose or mere knowledge—applies to aiding-and abetting claims under the ATS. That question has great practical significance, particularly in a case like this one where the alleged aiding and abetting stems from a business's sale of products that were lawful under Commerce Department regulations and have multiple beneficial uses. As the panel recognized, the question is the subject of a circuit conflict; this Court requires only knowledge, while the Second and Fourth Circuits require intent. Panel Op. 49 & n.16 (citing *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244 (2d Cir. 2009); and *Aziz v. Alcolac, Inc.*, 658 F.3d 388 (4th Cir. 2011)). This Court has also expressed deep internal division on the question, with eight judges contending that this Court is on the "wrong side" of the circuit split. *Doe v. Nestlé USA, Inc.*, 788 F.3d 946, 951 (9th Cir. 2015) (Bea, J., joined by O'Scannlain, Gould, Tallman, Bybee, Callahan, M. Smith and N.R. Smith, JJ., dissenting from denial of rehearing en banc). Such an

entrenched circuit conflict is a paradigmatic basis for certiorari generally, *see* Sup. Ct. R. 10(a), and at least one Justice has suggested that this conflict in particular should be resolved, *see Nestlé*, 593 U.S. at 657-58 (Alito, J., dissenting).  The mens rea standard thus readily presents a substantial question.

> **D.   The Petition Will Present The Substantial Question Whether Aiding-And-Abetting Liability Is Available Under The TVPA**

Finally, the individual executives' certiorari petition will present the question whether aiding-and-abetting liability is available under the TVPA.  It is undisputed that the TVPA does not expressly provide for aiding-and-abetting liability, so *Central Bank* forecloses judicially implied aiding-and-abetting liability for the reasons explained above.  *See supra* Part I.A; *accord Exxon*, 654 F.3d at 87 (Kavanaugh, J., dissenting in part); Dissent from En Banc Denial 33.  Moreover, the TVPA's text—which applies only to a person who "*subjects* an individual to torture," 28 U.S.C. § 1350 note § 2(a) (emphasis added)—strongly counsels against any implication of aiding-and-abetting liability even apart from the *Central Bank* principle.

The chilling prospect of imposing *individual* liability on U.S. corporate executives based on alleged abuses by foreign governments to which the executives' businesses sold lawful products presents a plainly substantial question. The panel recognized that this theory has no precedent, describing the issue as "a matter of first impression."  Panel Op. 75.  The Supreme Court has granted review

16

to restrain courts' overreading of the liability provisions of the TVPA in the past, *see Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012), and there is at least a substantial chance that the Court will do so here as well.

## II.   THERE IS GOOD CAUSE FOR A STAY

A stay is warranted because Defendants will suffer irreparable harm should the mandate issue before the Supreme Court can consider Defendants' forthcoming petition, and important public interests strongly favor staying the mandate.  By contrast, plaintiffs will suffer no prejudice from a stay, and Defendants' petition would not "be frivolous or filed merely for delay."  9th Cir. R. 41-1.

This case implicates important questions of foreign policy, including which branch of the government is properly situated to address claims that necessarily turn on an allegation of a foreign government's violation of international law. Should the mandate issue and the case be returned to the district court, the mere act of proceeding with such an inquiry would itself endanger international comity. Such a danger would be severe in this case, as it would involve potential judicial findings that the sovereign government of "another world superpower" committed international-law violations against its own people—even though the U.S. State Department previously warned "about the foreign-policy implications of confronting China in a case very much like this one," including "concern for reciprocal actions against our citizens and officials."  Dissent from En Banc Denial

17

16, 18 (citing Letter from William H. Taft, IV, Dep't of State, to Assistant Att'y Gen. Robert D. McCallum, Re: *Doe v. Qi* (N.D. Cal.) (Sep. 25, 2002)); *see also id.* 38. Once such proceedings commence in a U.S. court, the potential fracturing it could cause to such foreign relations cannot be undone. In the face of such express concern from the State Department that adjudication could heighten foreign-policy tensions, due caution should be afforded before this case returns to the district court. Thus, there is more than enough good cause to stay the mandate to maintain the status quo that has existed since 2015 (when this appeal came before this Court), and to avoid a district court's intrusion into foreign policy determinations pending Supreme Court review.

Moreover, Cisco would be highly prejudiced should this case proceed in the district court. Plaintiffs' 86-page complaint centers around allegations of acts that took place abroad more than twenty years ago, implicating transnational, multilingual issues. Such complexities would be entirely unnecessary if the Supreme Court agrees that plaintiffs' ATS and TVPA claims should be dismissed.

By contrast, plaintiffs will suffer no prejudice from a stay of the mandate. This case is over thirteen years old, and has been with this Court since 2015. The Court has stayed proceedings in this case on multiple occasions, including to allow for en banc and Supreme Court proceedings in other cases to be heard to conclusion. *See, e.g.*, ECF 46, 72, 75. Indeed, this Court previously vacated

submission of this case pending the future filing of a petition for a writ of certiorari in *Nestlé*. *See* ECF 75. Given that this Court stayed proceedings in this case pending the filing of a petition for certiorari in *another* case raising ATS-related issues, a stay of the mandate is certainly warranted here to allow Defendants to present their own issues to the Supreme Court for review. In light of the decade that has been needed for the Court to resolve this appeal—and the disagreement among judges of this Court on whether it should proceed—a few more months to allow the Supreme Court to consider whether to hear these important issues will not prejudice either side. The lack of prejudice is confirmed by plaintiffs' position to not oppose this motion.

Finally, as a practical matter, the substantial questions to be raised in Defendants' petition go to threshold issues of whether plaintiffs' claims may proceed at all—and if so, what legal standards will govern those claims. A finding in Defendants' favor may dispose of this case in its entirety (or in the alternative, significantly affect its course), and the questions at issue are best resolved before the district court or parties invest resources on this case. Given the vigorous disagreements that multiple seasoned judges have raised as to these issues, clarity and finality in response to a Supreme Court petition will greatly inform any next steps in this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay issuance of the mandate pending the filing and disposition of Defendants' petition for a writ of certiorari.

September 9, 2024                    Respectfully submitted,

s/ *Kathleen M. Sullivan*
Kathleen M. Sullivan
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa St, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
kathleensullivan@quinnemanuel.com

Christopher G. Michel
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300  I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
christophermichel@quinnemanuel.com

Isaac Nesser
Todd Anten
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
isaacnesser@quinnemanuel.com
toddanten@quinnemanuel.com

*Attorneys for Defendants-Appellees Cisco Systems, Inc., John Chambers and Fredy Cheung*

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Fed. R. App. P. 27(d)(2)(A), the foregoing Unopposed Motion To Stay Mandate Pending Filing And Disposition Of Petition For Writ Of Certiorari is proportionately spaced, has a typeface of 14 points, and contains 4,631 words.

Dated: September 9, 2024

By: */s/ Kathleen M. Sullivan*
Kathleen M. Sullivan

*Counsel for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 9, 2024, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: September 9, 2024

By: */s/ Kathleen M. Sullivan*
Kathleen M. Sullivan

*Counsel for Defendants-Appellees*