Case No.: 15-16909

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

DOE I, DOE II, Ivy HE, DOE III, DOE IV, DOE V, DOE VI, ROE VII, Charles LEE, ROE VIII, DOE IX, LIU Guifu, WANG Weiyu, individually and on behalf of proposed class members,

Plaintiffs-Appellants,

v.

CISCO SYSTEMS, INC., John CHAMBERS, Fredy CHEUNG, and Does 1-100,

Defendants-Appellees.

---

On Appeal from the United States District Court for the Northern District of California, Case No. 5:11-cv-02449-EJD, Honorable Edward J. Davila, United States District Judge

---

**SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLANTS**

---

Paul Hoffman, Bar No. 71244
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
200 Pier Avenue, Suite 226
Hermosa Beach, CA 90254
(310) 717-7373
hoffpaul@aol.com

Catherine Sweetser, Bar No. 271142
UCLA Law Clinics
385 Charles E. Young Dr.
Los Angeles, CA 90095
(310) 825-9562
sweetser@law.ucla.edu

Terri Marsh, Bar No. 447125
Human Rights Law Foundation
1333 New Hampshire Ave. NW, Suite 200
Washington, DC 20036
(202) 774-0893
Terri.marsh.hrlf@gmail.com

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

STATEMENT ..... 2

ARGUMENT ..... 4

I. Plaintiffs Satisfy the ATS's Jurisdictional Requirements ..... 4

II. The ATS Is Consistent with Article III ..... 8

A. ATS Cases Arise Under Federal Law ..... 8

B. The ATS Is a Permissible Exercise of Protective Jurisdiction ..... 10

III. This Court Should Remand to the District Court for Further Proceedings ..... 12

A. New Legal Developments Permit Plaintiffs to Pursue a New Jurisdictional Theory ..... 13

B. Good Cause Exists to Permit Plaintiffs to Amend their Complaint on Remand ..... 15

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

### Cases

*Abagninin v. AMVAC Chem. Corp.*,
545 F.3d 733 (9th Cir. 2008) ....................................................................4

*Am. Timber & Trading Co. v. First Nat'l Bank of Or.*,
690 F.2d 781 (9th Cir. 1982) ....................................................................16

*Aviall Servs., Inc. v. Cooper Indus., LLC*,
572 F. Supp. 2d 676 (N.D. Tex. 2008) ....................................................15

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964) ....................................................................................12

*Cisco Sys., Inc. v. Doe I*,
146 S. Ct. 1882 (2026) ....................................................................1, 3, 4, 13

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ......................................................................................4

*DeForte v. Borough of Worthington*,
2020 WL 2487133 (W.D. Pa. May 14, 2020)............................................15

*Dennick v. R.R. Co.*,
103 U.S. 11 (1880) ........................................................................................8

*Doe I v. Cisco Sys., Inc.*,
73 F.4th 700 (9th Cir. 2023), *rev'd*, 146 S. Ct. 1882 ..............................3, 5, 6, 13

*Doe v. Qi*,
349 F. Supp. 2d 1258 (N.D. Cal. 2004).......................................................6

*Filartiga v. Pena-Irala*,
630 F.2d 876 (2d Cir. 1980) .........................................................................1

*Flores v. S. Peru Copper Corp.*,
414 F.3d 233 (2d Cir. 2003) .....................................................................4, 5

*Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*,
771 F.3d 1230 (10th Cir. 2014) .................................................................16

*Huerta-Guevara v. Ashcroft*,
321 F.3d 883 (9th Cir. 2003) ....................................................................14

*In re Estate of Ferdinand E. Marcos Hum. Rts. Litig.*,
978 F.2d 493 (9th Cir. 1992) ....................................................................10

*Jam v. Int'l Fin. Corp.*,
586 U.S. 199 (2019) ..................................................................................5

*Johnson v. City of Shelby, Miss.*,
574 U.S. 10 (2014) ....................................................................................16

*Kimes v. Stone*,
84 F.3d 1121 (9th Cir. 1996).....................................................................13

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013) ..................................................................................8

*Mostyn v. Fabrigas*,
98 Eng. Rep. 1021 (K.B. 1774)...................................................................8

*Nat'l Mut. Ins. Co. v. Tidewater Transfer Co.*,
337 U.S. 582 (1949) ..................................................................................10

*Nestlé USA, Inc. v. Doe*,
593 U.S. 628 (2021) ..................................................................................6

*Osborn v. Bank of United States*,
22 U.S. (9 Wheat.) 738 (1824) ...........................................................11, 12

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*,
945 F.3d 1076 (9th Cir. 2019) ..................................................................16

*Parks Sch. of Bus., Inc. v. Symington*,
51 F.3d 1480 (9th Cir. 1995) ....................................................................13

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) ..................................................................................4

*Roosevelt v. E.I. Du Pont de Nemours & Co.*,
958 F.2d 416 (D.C. Cir. 1992)...................................................................14

*Schumacher v. Beeler*,
293 U.S. 367 (1934) ........................................................................11

*Skinner v. Switzer*,
562 U.S. 521 (2011) ........................................................................16

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004) ........................................................3, 6, 7, 11, 13

*Textile Workers Union of Am. v. Lincoln Mills of Ala.*,
353 U.S. 448 (1957) ........................................................................10

*United States v. Jones*,
565 U.S. 400 (2012) ........................................................................14

*United States v. Thomas*,
726 F.3d 1086 (9th Cir. 2013) ........................................................14

*Verlinden B.V. v. Cent. Bank of Nigeria*,
461 U.S. 480 (1983) ......................................................................8, 9

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................14

*Wang v. Chinese Daily News, Inc.*,
737 F.3d 538 (9th Cir. 2013) ..........................................................14

*Wilcox v. First Interstate Bank of Or., N.A.*,
815 F.2d 522 (9th Cir. 1987) ..........................................................16

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. art. I, § 8, cl. 10 ..........................................................9

28 U.S.C.
§ 1330 ..............................................................................................9
§ 1350 ..................................................................................1, 4, 5, 6, 9
§ 1367 ..............................................................................................3

Fed. R. Civ. P.
R. 16 ...............................................................................................16
R. 23 ...............................................................................................14

**Other Authorities**

Anthony J. Bellia Jr. & Bradford R. Clark, *The Alien Tort Statute and the Law of Nations*, 78 U. Chi. L. Rev. 445 (2011) .......................................7

William R. Casto, *The Federal Courts' Protective Jurisdiction over Torts Committed in Violation of the Law of Nations*, 18 Conn. L. Rev. 467 (1986) ......................................................................4, 7, 11

William S. Dodge, *Customary International Law, Change, and the Constitution*, 106 Geo. L.J. 1559 (2018) .................................................5

The Federalist No. 3 (John Jay) (Clinton Rossiter ed., 1961) ...................................7

The Federalist No. 82 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ..............8

21 *Journals of the Continental Congress 1774–1789* (G. Hunt ed. 1912) ................7

Paul J. Mishkin, *The Federal "Question" in the District Courts*, 53 Colum. L. Rev. 157 (1953) .........................................................................11

Beth Stephens, *Federalism and Foreign Affairs: Congress's Power to "Define and Punish . . . Offenses against the Law of Nations,"* 42 Wm. & Mary L. Rev. 447 (2000) ..................................................................................................9

## INTRODUCTION

Plaintiffs-Appellants ("Plaintiffs") respectfully submit this brief in response to the Court's Order. ECF No. 120. In *Cisco Systems, Inc. v. Doe I*, 146 S. Ct. 1882 (2026), the Supreme Court held that courts cannot create causes of action derived from the law of nations under the Alien Tort Statute ("ATS"). *See id.* at 1892–93. Yet it did not interpret the scope of subject matter jurisdiction under the ATS, which extends to "any civil action by an alien for a tort only, committed in violation of the law of nations." 28 U.S.C. § 1350.

Plaintiffs' allegations fit squarely within that jurisdictional grant. Plaintiffs are mostly aliens,[1] and they allege they suffered torts, namely assault, battery, false imprisonment, and wrongful death. These torts give rise to civil liability under state or foreign law. They also allege that these torts were committed in violation of the law of nations, as they allege Defendants-Appellees ("Cisco") aided and abetted torture, extrajudicial killing, and prolonged arbitrary detention. This Court should thus find that Plaintiffs' allegations meet the jurisdictional requirements of the ATS and remand for the district court to resolve any remaining issues, such as the applicable law and Cisco's other challenges to Plaintiffs' causes of action. *See, e.g.*, *Filartiga v. Pena-Irala*, 630 F.2d 876, 880–85, 889 (2d Cir. 1980) (finding

[1] Charles Lee is a U.S. citizen and the ATS thus does not confer jurisdiction over his claims. ER at 34.

appellants met ATS jurisdictional requirements as threshold matter and remanding).

The ATS is consistent with Article III for two reasons. First, civil actions under the ATS arise under the laws of the United States because courts must apply the statute at the outset of each case, finding a violation of international law. Second, the ATS is a permissible form of protective jurisdiction.

Remand is warranted so that Plaintiffs can pursue this theory. Plaintiffs relied on binding precedent that held courts may create ATS causes of action under international law. The Supreme Court overturned that precedent, and the decision constitutes a significant legal change permitting Plaintiffs to advance a new theory and to amend their complaint.

## STATEMENT

Plaintiffs allege that Cisco aided and abetted and conspired with officials of the People's Republic of China to further the persecution of Falun Gong believers through torture, extrajudicial killing, and prolonged arbitrary detention. *See, e.g.*, Excerpts of Record ("ER") at 101, 104, 105–06. All Plaintiffs asserted Cisco was liable for assault and battery, and some Plaintiffs also asserted false imprisonment claims. ER at 108–12.

In 2014, the district court dismissed Plaintiffs' federal claims. ER at 24–27. The district court also exercised its discretion to dismiss Plaintiffs' assault, battery, and false imprisonment claims under 28 U.S.C. § 1367(c)(3). ER at 27.

On appeal, this Court reversed in substantial part, reinstating Plaintiffs' ATS claims. *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 746 (9th Cir. 2023), *rev'd*, 146 S. Ct. 1882. In so doing, the Court noted that Cisco did not contest that torture, extrajudicial killing, and prolonged arbitrary detention violate international law. *Id.* at 716. The Court also found that Plaintiffs alleged sufficient facts to show Cisco aided and abetted the abuses under international law. *See id.* at 727–29, 734–35.

The Supreme Court reversed and remanded. 146 S. Ct. at 1893. The Court affirmed that "the ATS is a jurisdictional statute." *Id.* at 1892. But it effectively overruled its prior holding that courts could create causes of action under the ATS based on contemporary international law norms. *See id.* Instead, the Court "close[d] the door that *Sosa*" *v. Alvarez-Machain*, 542 U.S. 692 (2004) opened. *Id.* Therefore, the Court reversed this Court's decision finding Plaintiffs had causes of action for aiding and abetting human rights violations. *Id.* The Court did not address whether international law prohibits aiding and abetting or Plaintiffs' allegations. The Court "remanded for further proceedings" consistent with its opinion. *Id.* at 1893.

## ARGUMENT

### I. Plaintiffs Satisfy the ATS's Jurisdictional Requirements

The Supreme Court's decision forecloses recognition of causes of action directly under international law except for possibly three violations recognized at the Founding. But the Court reaffirmed that the ATS is jurisdictional. *Cisco*, 146 S. Ct. at 1892. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" by Congress. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Plaintiffs' allegations satisfy the ATS's jurisdictional requirements.

ATS jurisdiction lies where an (1) alien brings an action for a (2) tort only (3) "committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. As Professor Casto has explained, the ATS vested jurisdiction for torts like "assaults, batteries, and trespasses that were contrary" to international law. William R. Casto, *The Federal Courts' Protective Jurisdiction over Torts Committed in Violation of the Law of Nations*, 18 Conn. L. Rev. 467, 507 (1986).

As to the third requirement, "[t]he law of nations is synonymous with 'customary international law.'" *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 738 (9th Cir. 2008) (quoting *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 247 (2d Cir. 2003)). When Congress refers to a general body of law, as it did in the ATS,

"the statute adopts the law on that subject as it exists whenever a question under the statute arises." *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 210 (2019). For example, a statute referring to piracy as defined by the law of nations would incorporate the modern definition of piracy. *See id.* Ample evidence also shows the First Congress understood the law of nations evolved. *See* William S. Dodge, *Customary International Law, Change, and the Constitution*, 106 Geo. L.J. 1559, 1581–82 (2018).

Plaintiffs meet each of these requirements. First, most Plaintiffs are aliens, as they were born in China and are not citizens of the United States. ER at 32–35. Second, Plaintiffs allege they suffered torts, namely assault, battery, false imprisonment, and wrongful death. These torts would give rise to civil liability under state or foreign law.

Third, Plaintiffs allege these torts were committed in violation of the law of nations. As this Court recognized, customary international law prohibits torture, 73 F.4th at 716 n.7, and torture includes the infliction of severe pain and suffering, both physical and mental, on an individual, *cf.* 28 U.S.C. § 1350 note. Plaintiffs allege Chinese security inflicted and threatened to inflict severe pain and suffering on them or their family members while they were in custody. *See* ER at 78–94. Extrajudicial killing also violates international law, *see Flores*, 414 F.3d at 249, and such killings are those "not authorized by a previous judgment pronounced by a

regularly constituted court" consistent with due process safeguards, 28 U.S.C. § 1350 note. Roe VIII alleges that Chinese security beat Doe VIII to death while he was detained. ER at 88. Prolonged arbitrary detention likewise violates international law. *See Sosa*, 542 U.S. at 737. It occurs when state officials detain persons over long periods, preventing them from consulting with counsel or subjecting them to inhumane conditions. *See Doe v. Qi*, 349 F. Supp. 2d 1258, 1325–26 (N.D. Cal. 2004). Plaintiffs allege Chinese officials detained them for months or years pursuant to unfair legal processes and subjected them to inhumane conditions and torture. *See* ER at 78–94. Finally, aiding and abetting violates international law and Plaintiffs sufficiently alleged Cisco aided and abetted the relevant violations. *See Doe I*, 73 F.4th at 717–18, 727–29, 734–35.

Interpreting the ATS to confer jurisdiction over state or foreign-law claims by aliens is consistent with the original understanding of the ATS. The Continental Congress lacked the ability to promote harmony in foreign affairs by providing for civil remedies to aliens for tortious conduct that violated international law. *See, e.g.*, *Sosa*, 542 U.S. at 716. When someone attacked a French diplomatic official in Philadelphia, France vigorously protested and threatened to leave if there was no accountability. *See id.* at 716, 717 & n.11; *see also Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 642 (2021) (Gorsuch, J., concurring) (explaining that the First Congress feared the failure to provide remedies would justify war and reprisals). In 1781,

the Continental Congress called on states to provide aliens access to remedies in these circumstances. 21 Journals of the Continental Congress 1774-1789 at 1136–37 (G. Hunt ed., 1912). Only Connecticut acted. *See Sosa*, 542 U.S. at 716. In the decade after, states often failed to redress international law violations. *See, e.g.*, Anthony J. Bellia Jr. & Bradford R. Clark, *The Alien Tort Statute and the Law of Nations*, 78 U. Chi. L. Rev. 445, 501–06 (2011) (documenting violence against British and Spanish subjects in the 1780s along with failure to offer redress).

In advocating for the Constitution, the Founders explained why national control over foreign affairs was necessary. In *The Federalist No. 3*, John Jay warned about leaving matters implicating the "laws of nations" to "adjudications . . . in thirteen States." The Federalist No. 3, at 43 (John Jay) (Clinton Rossiter ed., 1961). In his view, judges "appointed by different and independent governments" influenced by "different local laws and interests" would reach inconsistent conclusions. *Id.* He likewise had doubts about the experience and expertise of state-court judges, reasoning that the national government would be able to select those with the expertise to produce "wise, systematical, and judicious" decisions that would be "more satisfactory with respect to other nations." *Id.*; *see also* Casto, *supra*, at 520–22 (describing, among others, Alexander Hamilton's opinions on the need for a federal forum for federal affairs questions).

Granting federal jurisdiction over these alien tort actions is also consistent with the transitory tort doctrine. By the eighteenth century, it was well-established that tort actions could be filed where the tortfeasor was found. *See, e.g.*, *Mostyn v. Fabrigas*, 98 Eng. Rep. 1021, 1030 (K.B. 1774) (Lord Mansfield, C.J.); *see also Dennick v. R.R. Co.*, 103 U.S. 11, 18 (1880). This rule was justified based on the belief that the law of the state where the cause accrued permitted recovery. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 119 (2013). The Framers understood this rule. Alexander Hamilton explained that the judicial power extends to all civil cases that "look[] beyond [a court's] own local or municipal laws," such as actions derived from Japanese law. The Federalist No. 82, at 493 (Alexander Hamilton) (Clinton Rossiter ed., 1961).

## II. The ATS Is Consistent with Article III

Congress can confer jurisdiction on tort claims by aliens where state or foreign law provides the rule of decision for two independent reasons. First, ATS suits require application of federal law at the outset of every case and thus arise under the laws of the United States. Second, Congress can provide a federal forum for claims within the ATS as a form of protective jurisdiction.

### A. ATS Cases Arise Under Federal Law

Congress can confer federal jurisdiction over matters "that might call for the application of federal law." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480,

492 (1983). In exercising its powers under Article I, Congress may specify a particular class of cases should have a federal forum. *See id.* at 493–94. Where a court must apply that law at the outset of every case, that action arises under federal law. *See id.* at 494.

In its leading case on arising under jurisdiction, the Supreme Court found a provision like the ATS compatible with Article III. Congress enacted the Foreign Sovereign Immunities Act ("FSIA") pursuant to its Article I powers, including the power to regulate foreign commerce. *Verlinden*, 461 U.S. at 496. The FSIA provides federal jurisdiction "of any nonjury civil action against a foreign state" where the state lacks immunity. 28 U.S.C. § 1330(a). The Court found that FSIA cases arise under federal law even though they often depend on state law for the rule of decision. *See Verlinden*, 461 U.S. at 491–94. This was so because the FSIA requires courts to apply federal law at the outset of each case to determine whether the foreign nation lacks immunity. *See id.* at 494.

The same is true of the ATS. In enacting the statute, Congress exercised its power to "define and punish . . . [o]ffences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10; *see* Beth Stephens, *Federalism and Foreign Affairs: Congress's Power to "Define and Punish . . . Offenses against the Law of Nations*," 42 Wm. & Mary L. Rev. 447, 520–24 (2000). Courts must apply the ATS at the "threshold of every action," *Verlinden*, 461 U.S. at 493, determining whether the

tort alleged also constitutes a violation of a treaty or of the law of nations, 28 U.S.C. § 1350. These actions thus arise under the laws of the United States. *See In re Estate of Ferdinand E. Marcos Hum. Rts. Litig.*, 978 F.2d 493, 502 (9th Cir. 1992) (holding ATS actions arise under federal law for purposes of Article III because the statute requires courts to identify international law norms and assess whether they were violated).

### B. The ATS Is a Permissible Exercise of Protective Jurisdiction

Congress also has the power to vest federal courts with "protective jurisdiction." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 460 (1957) (Burton, J., concurring). At a minimum, Congress may do so where it is critical to achieve an important federal policy within the realm of congressional authority. Indeed, multiple Supreme Court Justices have argued that Congress may grant federal jurisdiction over any matter within Congress's legislative authority. *See Nat'l Mut. Ins. Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 600 (1949) (Jackson, J., joined by Black & Burton, JJ.) (plurality op.). Here, major foreign relations problems could arise if aliens who suffer law of nations violations face difficulties pursuing tort remedies in state courts. Congress thus had authority to provide a federal forum.

The notion that Congress may confer federal jurisdiction over state-law disputes to protect a federal interest has long been reflected in the Supreme Court's

decisions. In *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738 (1824), for example, the Court upheld a statute conferring federal jurisdiction over cases where the Bank of the United States was a party. *See id.* at 817, 823. It did so because such cases might raise federal questions, even if some would not. *See id.* at 823–24. As Professor Mishkin observed, *Osborn* "indicates that there are situations in which Congress may . . . use the 'inferior' federal courts as a means of protecting interests around which it proposes to throw its cloak." Paul J. Mishkin, *The Federal "Question" in the District Courts*, 53 Colum. L. Rev. 157, 188 (1953). While the Supreme Court has never directly addressed this question, jurisdictional provisions permitting litigation of state-law claims by bankruptcy trustees in federal courts reflect the same theory. *See, e.g.*, *Schumacher v. Beeler*, 293 U.S. 367, 371–72 (1934); *see also* Mishkin, *supra*, at 189–90, 190 n.141.

Given the authority of the federal government over foreign affairs and international law, the First Congress could constitutionally enact the ATS as a form of protective jurisdiction. A key motivation in adopting the Constitution was to respond to the deficiencies in the Confederation system with respect to managing foreign affairs. *See supra* pp. 6–7. "Experience under the Articles of Confederation clearly demonstrated the error of leaving any aspect of foreign relations to the sole control of the states." Casto, *supra*, at 515; *see also Sosa*, 542 U.S. at 715–18. In particular, the Framers expected that state courts may succumb

to local interests and fail to appreciate the consequences of disputes for the nation. *See supra* p. 7. As the Supreme Court has recognized, the Constitution and the ATS reflect a "desire to give matters of international significance to the jurisdiction of federal institutions." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 427 n.25 (1964).

These considerations substantially mirror the motivations giving rise to the provision in *Osborn*. The Bank was widely disdained by certain states. Indeed, *Osborn* arose out of Ohio's effort to violate Supreme Court precedent by imposing crushing taxes on the Bank. *See* 22 U.S. at 739–44. Congress thus had persuasive reason to permit the Bank to litigate in a federal forum. Equally weighty concerns justify a federal forum for ATS cases. Grave consequences, including war, could arise if state courts did not permit alien victims of international law violations to obtain remedies. The First Congress had authority to channel those matters to federal courts.

## III. This Court Should Remand to the District Court for Further Proceedings

Because Plaintiffs' allegations support claims that satisfy the jurisdictional requirements of the ATS, this Court should reverse the district court and remand for further proceedings. Plaintiffs previously relied on Supreme Court precedent articulating how courts were to analyze claims under the ATS. The Supreme

Court's reversal of that precedent provides good cause to permit Plaintiffs to pursue this theory now and to permit them to amend their complaint on remand.

### A. New Legal Developments Permit Plaintiffs to Pursue a New Jurisdictional Theory

Courts have discretion to consider new arguments that will not prejudice the other side "(1) to prevent a miscarriage of justice; (2) when a change in law raises a new issue while an appeal is pending; and (3) when the issue is purely one of law." *Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1488 (9th Cir. 1995)). Throughout this litigation, Plaintiffs relied on *Sosa*'s holding that the ATS permits recognition of claims directly under international human rights law. The Supreme Court's decision to overturn that precedent is reason to consider Plaintiffs' argument now, and Cisco will face no prejudice.

*Cisco* constitutes a significant change in the law. In *Sosa*, the Supreme Court held that federal courts may create causes of action for violations of international human rights norms in certain circumstances. 542 U.S. at 724–25. Following *Sosa*, this and other circuits applied *Sosa* to recognize such causes of action. *See, e.g.*, *Doe I*, 73 F.4th at 718 (citing precedent from multiple circuits permitting creation of causes of action for aiding and abetting human rights violations). In reviewing this Court's decision in this case, however, the Supreme Court expressly stated it was "clos[ing] the door" left open by *Sosa*. 146 S. Ct. at

1892. Before the Supreme Court's decision, Plaintiffs had no reason to pursue their current theory.

This Court has considered new arguments in similar circumstances. In *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013), this Court permitted a defendant to make an argument it failed to raise before the district court or in its opening brief. *See id.* at 543. It did so because it believed the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) was a "significant legal development" on the commonality requirement of Rule 23(a). *Wang*, 737 F.3d at 543; *see also Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 886 (9th Cir. 2003) (considering new argument based on "clarification" of the law). Notably, the Court did not state *Dukes* made a new argument available; indeed, the Court explained how *Dukes* was distinguishable on the facts and consistent with prior precedent. *See Wang*, 737 F.3d at 543–44; *see also United States v. Thomas*, 726 F.3d 1086, 1092 & n.5 (9th Cir. 2013) (permitting party to raise new argument on appeal based on *Jones* and the trespass theory); *United States v. Jones*, 565 U.S. 400, 405–07 (2012) (explaining that the Supreme Court long ago endorsed the trespass theory and never repudiated it in later cases). Other circuits likewise do not limit consideration of new arguments to arguments that were unavailable. *See, e.g.*, *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419–21 (D.C. Cir. 1992) (considering defendant's argument based on intervening case for first time

on appeal where earlier appellate decision already expressed skepticism of plaintiff's position).

Cisco will suffer no prejudice if the Court permits consideration of this theory. Cisco has been on notice that Plaintiffs asserted state-law claims and asserted that its conduct violated international law since 2011. Compl. ¶¶ 233–307 (N.D. Cal. May 19, 2011), ECF No. 1. This Court's decision reinstating Plaintiffs' federal claims would have permitted Plaintiffs to pursue state-law claims on remand. *See, e.g.*, *Aviall Servs., Inc. v. Cooper Indus., LLC*, 572 F. Supp. 2d 676, 702 (N.D. Tex. 2008); *DeForte v. Borough of Worthington*, 2020 WL 2487133, at *6–8 (W.D. Pa. May 14, 2020). Cisco cannot plausibly argue that it failed to preserve relevant evidence, developed settled expectations, or would have developed a different factual record. Moreover, Cisco has been given the opportunity to address Plaintiffs' theory now.

### B. Good Cause Exists to Permit Plaintiffs to Amend their Complaint on Remand

Plaintiffs relied on prior Supreme Court precedent, so the cause of action portion of their complaint does not clearly assert causes that constitute both tort claims and violations of the law of nations. Because it is the facts alleged and not the labels that matter, however, the operative complaint sufficiently raises this theory. Plaintiffs nonetheless submit it would be sensible to amend, and that good cause exists to direct the district court to permit Plaintiffs to do so on remand.

"[A] complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). That is because plaintiffs need only "inform[ the defendant] of the factual basis for their complaint." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014); *see also Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019) ("A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." (quoting *Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781, 786 (9th Cir. 1982))).

As discussed above, *supra* at 5–6, Plaintiffs allege torts that would give rise to civil liability under state or foreign law. Those same allegations demonstrate that they suffered international law violations. Because most Plaintiffs allege they are aliens and they invoked the ATS as a basis for jurisdiction, *see* ER at 32–36, the complaint sufficiently raises this theory.

In any event, the Supreme Court's decision justifies permitting Plaintiffs to amend on remand. *See Wilcox v. First Interstate Bank of Or., N.A.*, 815 F.2d 522, 530 (9th Cir. 1987) (holding parties should be given chance to amend pleadings to account for intervening legal decisions); *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (holding good cause may exist to permit amendment after expiration of a Rule 16(b) scheduling order based on changes in the law).

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the district court and remand for further proceedings.

Dated: September 2, 2026

Respectfully submitted,

/s/ Paul Hoffman

Paul Hoffman, Bar No. 71244
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
200 Pier Avenue, Suite 226
Hermosa Beach, CA 90254
(310) 717-7373
hoffpaul@aol.com

Terri Marsh, Bar No. 447125
Human Rights Law Foundation
1333 New Hampshire Ave. NW,
Suite 200
Washington, DC 20036
(202) 774-0893
Terri.marsh.hrlf@gmail.com

Catherine Sweetser, Bar No. 271142
UCLA Law Clinics
385 Charles E. Young Dr.
Los Angeles, CA 90095
(310) 825-9562
sweetser@law.ucla.edu

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 15-16909

I am the attorney or self-represented party.

**This brief contains** 3,880 **words,** including ______ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ◉ complies with the length limit designated by court order dated 08/12/2026.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Paul Hoffman **Date** September 2, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*