**No. 15-16909**

# In the United States Court of Appeals for the Ninth Circuit

---

DOE I; DOE II; IVY HE; DOE III; DOE IV; DOE V; DOE VI; CHARLES LEE; ROE VII; ROE VIII; LIU GUIFU; DOE IX; WANG WEIYU, INDIVIDUALLY AND ON BEHALF OF PROPOSED CLASS MEMBERS,
APPELLANTS

*v.*

CISCO SYSTEMS, INC.; JOHN CHAMBERS; FREDY CHEUNG; DOES 1-100,
APPELLEES

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA (CIV. NO. 11-2449)*
*(THE HONORABLE EDWARD J. DAVILA, J.)*

---

**SUPPLEMENTAL BRIEF OF APPELLEES**

---

KANNON K. SHANMUGAM
MASHA G. HANSFORD
JAKE L. KRAMER
DAVIS POLK & WARDWELL LLP
*1050 17th Street, N.W.*
*Washington, DC 20006*
*(202) 962-7000*
*kshanmugam@davispolk.com*

## TABLE OF CONTENTS

Page

Statement ........................................................................................ 2

Argument ........................................................................................ 6

I. Appellants forfeited any challenge to the dismissal of their state-law claims ........................................................................ 7

II. Reopening the state-law claims would contravene the scope of the Supreme Court's remand ........................................... 11

III. Appellants' new theory of jurisdiction over the state-law claims is wrong ........................................................................ 13

Conclusion ........................................................................................ 16

## TABLE OF AUTHORITIES

### CASES

*Alaska Department of Fish & Game* v. *Federal Subsistence Board*, 139 F.4th 773 (9th Cir. 2025) ........................ 12

*Ciria* v. *Gerrans*, 178 F.4th 491 (9th Cir. 2026) ........................ 7

*Cisco Systems, Inc.* v. *Doe I*, 146 S. Ct. 1882 (2026) ........................ *passim*

*Doe* v. *Chao*, 511 F.3d 461 (4th Cir. 2007) ........................ 12

*Doe I* v. *Cisco Systems, Inc.*, 73 F.4th 700 (9th Cir. 2023) ........................ 4, 5

*Doe* v. *Nestle SA*, 4 F.4th 706 (Mem.) (9th Cir. 2021) ........................ 11

*Doe* v. *United States*, 463 F.3d 1314 (Fed. Cir. 2006) ........................ 12

*Estate of Cummings ex rel. Montoya* v. *Community Health System, Inc.*, 881 F.3d 793 (10th Cir. 2018) ........................ 12

*Estate of Ferdinand E. Marcos Human Rights Litigation*, *In re* 978 F.2d 493 (9th Cir. 1992) ........................ 14

*Hartzell* v. *Marana Unified School District*, 130 F.4th 722 (9th Cir. 2025) ........................ 13

*Hillis* v. *Heineman*, 626 F.3d 1014 (9th Cir. 2010) ........................ 8

Page

Cases—continued:

*Maryland* v. *Exxon Mobil Corp.*, 352 F. Supp. 3d 435 (D. Md. 2018)............15
*Medical Center Pharmacy* v. *Holder*, 634 F.3d 830 (5th Cir. 2011)................12
*Mesa* v. *California*, 489 U.S. 121 (1989)..........................................................15
*Montana* v. *Talen Montana, LLC*, 130 F.4th 675 (9th Cir. 2025)...................11
*Proctor* v. *Vishay Intertechnology Inc.*,
584 F.3d 1208 (9th Cir. 2009)........................................................................13, 14
*Sosa* v. *Alvarez-Machain*, 542 U.S. 692 (2004)...........................................5, 10
*United States* v. *Bell*, 5 F.3d 64 (4th Cir. 1993)..................................................12
*United States* v. *Husband*, 312 F.3d 247 (7th Cir. 2002)..................................12
*United States* v. *Jones*, 565 U.S. 400 (2012)...........................................................9
*United States* v. *O'Dell*, 320 F.3d 674 (6th Cir. 2003)........................................12
*United States* v. *Thomas*, 726 F.3d 1086 (9th Cir. 2013)...............................9, 10
*Verlinden B.V.* v. *Central Bank of Nigeria*, 461 U.S. 480 (1983)..............13, 14

**CONSTITUTION AND STATUTES**

U.S. Const. art. III ........................................................................ 2, 7, 13-15
U.S. Const. amend. IV..............................................................................................9
Alien Tort Statute, 28 U.S.C. 1350............................................................*passim*
Electronic Communications Privacy Act,
Pub. L. No. 99-508, 100 Stat. 1848 (1986) (18 U.S.C. § 2512(1))..............1, 3, 4
Foreign Sovereign Immunities Act,
Pub. L. No. 94-583, 90 Stat. 2891 (1976) (28 U.S.C. § 1330) ..........................14
Torture Victim Protection Act,
Pub. L. No. 102-256, 106 Stat. 73 (1991) (28 U.S.C. 1350 note)...........*passim*
28 U.S.C. § 1367(c) ...................................................................................................4
28 U.S.C. § 1367(c)(3) ...............................................................................................8
28 U.S.C. § 1442(a)...................................................................................................15
California Unfair Competition Law,
Cal. Bus. & Prof. Code §§ 17200-17210 ...............................................................3

**MISCELLANEOUS**

Charles Allen Wright & Arthur R. Miller,
*Federal Practice & Procedure* (3d ed. April 2026 update)......................12, 15

The only way to dispose of this appeal is to enter a judgment affirming the district court's decision. Below, the district court dismissed appellants' claims under the Alien Tort Statute (ATS), the Torture Victim Protection Act (TVPA), and the Electronic Communications Privacy Act for failure to state a claim, and declined to exercise supplemental jurisdiction over plaintiffs' state-law claims. In their appeal to this Court, appellants challenged only the dismissal of the ATS and TVPA claims. This Court reversed the district court as to those claims, but the Supreme Court in turn reversed. It held that "[c]ourts cannot create new rights of action to remedy violations of international law." *Cisco Systems, Inc.* v. *Doe I*, 146 S. Ct. 1882, 1889, 1892 (2026). And by remanding for further proceedings consistent with its opinion, the Court was instructing that appellants' ATS and TVPA claims be dismissed. Because appellants' ATS and TVPA claims were the only claims before this Court, this case is now over, and the district court's judgment should be affirmed.

Appellants instead contend that they should be given an opportunity to revive their state-law claims under a new theory of jurisdiction that invokes the ATS. According to appellants, the ATS confers federal-court jurisdiction over state-law claims whenever those claims address conduct that would also be a violation of the law of nations. But appellants did not appeal the dismissal of their state-law claims; accordingly, they cannot try to keep this case alive based on an argument that the state-law claims should be revived. Moreover,

appellants never presented this theory of ATS jurisdiction over their state-law claims in district court. Because plaintiffs forfeited this argument before the district court and on appeal, that argument cannot be made at this stage; the only remaining task for this Court is to enter judgment in accordance with the Supreme Court's mandate.

In the event that this Court nonetheless considers appellants' argument on the merits, it need not be detained long. Appellants' new theory of ATS jurisdiction borders on the frivolous. No court has ever accepted it, and doing so would either raise insurmountable difficulties under Article III of the Constitution or fly in the face of the Supreme Court's decision in this case. The Court should enter judgment and finally bring this case to an end.

## STATEMENT

1. Appellants are twelve Chinese nationals and one American citizen affiliated with Falun Gong, a religious movement that the Chinese government declared illegal in 1999. ER 38. They allege that Chinese government and party officials violated international law by subjecting them to torture, forced labor, beatings, forced conversions, and other abuses. ER 36-41. In 2011, they sued Cisco Systems, Inc., and two of its former executives, John Chambers and Fredy Cheung. *See* D. Ct. Dkt. 1. Appellants twice amended their complaint. D. Ct. Dkt. 61; D. Ct. Dkt. 113. In the operative version of the complaint, appellants allege that Cisco had aided and abetted the Chinese officials

in violating international law. ER 30-32. Appellants raised seven claims under the ATS for aiding and abetting violations of international-law norms prohibiting torture; cruel, inhuman, or degrading treatment; forced labor; prolonged and arbitrary detention; crimes against humanity; extrajudicial killing; and forced disappearance. ER 101-106. Appellants also asserted three claims under state law for battery, assault, and false imprisonment, ER 108-112; a claim under the California unfair competition law, ER 112-114; and a claim under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2512(1), ER 106-107. Appellant Charles Lee asserted a claim against Chambers and Cheung for aiding and abetting torture under the TVPA. ER 101.

2. The district court dismissed this action in 2014. ER 15-28. The court held that, while aiding and abetting was cognizable under the ATS, appellants' claims impermissibly targeted extraterritorial conduct and failed adequately to allege either the *actus reus* or the *mens rea* elements. ER 25-27. As to the remaining federal-law claims, the court held that aiding-and-abetting liability was not available under the TVPA and that appellees were exempt from the scope of the ECPA. ER 25, 27-28.

The district court dismissed appellants' state-law claims for lack of subject-matter jurisdiction. ER 27. In their opposition to the motion to dismiss, appellants devoted a single footnote to contending that the court could assert jurisdiction over the state-law claims. D. Ct. Dkt. 123, at 30 n.57. Specifically,

appellants argued in the footnote that, even if the federal-law claims were dismissed, the district court should exercise its discretion under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(c), to maintain jurisdiction over the state-law claims. D. Ct. Dkt. 123, at 30 n.57. Appellants did not argue that the ATS conferred jurisdiction over the state-law claims (nor that it did so even if the ATS claims were themselves dismissed). *Id.* When it dismissed the ATS claims, the district court "decline[d] to exercise supplemental jurisdiction over the remaining state law claims" and dismissed without prejudice. ER 27-28.

3. Appellants raised four issues on appeal: (1) whether appellants' allegations "establish aiding and abetting liability under the Alien Tort Statute,"; (2) whether appellants' "ATS claims [were] barred under the presumption against extraterritoriality"; (3) whether the TVPA "provide[s] for aiding and abetting liability"; and (4) whether, in assessing appellants' ATS claims, "the district court err[ed] in not considering [appellants'] claims that [appellees] participated in a conspiracy or joint criminal enterprise." Dkt. 9, at 2. Appellants did not appeal the dismissal of their claims under the ECPA or state law. *See id.*; Dkt. 24, at 11 n.5.

This Court reversed the district court's dismissal of appellants' claims under the ATS and the TVPA. 73 F.4th 700 (2023). As to those claims, the majority held that aiding and abetting liability was cognizable under the ATS, that appellants had plausibly alleged the *actus reus* and *mens rea* elements,

and that the claims against Cisco (but not the individual defendants) could proceed consistent with the presumption against extraterritoriality. *Id.* at 746-751. The majority also held that the TVPA encompassed claims against those who aid and abet torture. *Id.* at 741-744. Judge Christen dissented as to the ATS claims. *Id.* at 746 (Christen, J., concurring in part and dissenting in part).

4. The Supreme Court reversed. 146 S. Ct. 1882 (2026). The Court explained that in earlier cases, it had recognized that the ATS "is a jurisdictional statute creating no new causes of action," giving "the district courts 'cognizance' of certain causes of action" that already existed as a matter of the law of nations. *Id.* at 1889 (quoting *Sosa* v. *Alvarez-Machain*, 542 U.S. 692, 713, 723-724 (2004)). But those earlier cases also left open the possibility that federal courts could, in some circumstances, create "causes of action to enforce norms of international law." *Id.* at 1887. After observing the tension between those points, the Court rejected the latter proposition, holding that "courts may not create new causes of action for violations of international norms" under the ATS. *Id.* at 1886.

The Court reasoned that "ATS cases by their nature implicate foreign policy," making it "difficult to think of a case in which a court might safely conclude that a new ATS cause of action would not have detrimental foreign policy consequences." 146 S. Ct. at 1890 (internal quotation marks and citation

omitted). Moreover, "the power to create causes of action belongs to Congress." *Id.* For those reasons, the Supreme Court "[s]hut[] off the possibility of additional ATS liability." *Id.* at 1892 n.2. The Court then directed that appellants' "ATS claims against Cisco must be dismissed." *Id.*

The Supreme Court also reversed this Court's holding that a cause of action for aiding and abetting was available under the TVPA, reasoning that the statute "nowhere mentions aiding-and-abetting liability," which was "enough to settle the issue." 146 S. Ct. at 1893. At the conclusion of the opinion, the Supreme Court "reversed" this Court's judgment and "remanded for further proceedings consistent with this opinion." *Id.*

**ARGUMENT**

Further proceedings are not warranted because all issues on appeal have now been fully resolved. Appellants challenged the district court's dismissal of their ATS and TVPA claims; the Supreme Court has ruled that the dismissal was appropriate. It is too late in the day, and outside the scope of the Supreme Court's remand, for appellants to present a new theory for reversing the district court's dismissal of their state-law claims for lack of subject-matter jurisdiction—a ruling that they did not appeal and a theory that they did not previously present either to the district court or to this Court.

Nor does appellants' new theory of subject-matter jurisdiction have any merit. In an effort to prolong these proceedings in the face of their loss in the

Supreme Court, appellants are trying to repackage their argument that the ATS creates a federal cause of action by contending that the ATS confers jurisdiction over state-law claims whenever those claims address conduct that would also violate the law of nations. That argument ignores basic Article III principles. And, by attempting to create a workaround to the Supreme Court's guidance in *Cisco* as to the ATS's substantive scope, appellants seek to lead this Court into error. The Court should enter judgment affirming the district court's dismissal.

## I. Appellants Forfeited Any Challenge To The Dismissal Of Their State-Law Claims

Appellants seek further proceedings to address the viability of their previously dismissed state-law claims. *See* Dkt. 111. Now that the Supreme Court has held that federal courts cannot create new causes of action under the ATS, appellants say that the ATS "confer[s] jurisdiction over state-law claims that also constitute violations of the law of nations." Dkt. 117, at 2; *see* Dkt. 111. No further proceedings are warranted because the time to appeal the dismissal of their state-law claims has long passed.

Appellants forfeited any challenge to the district court's dismissal of their state common-law claims by not challenging the dismissal of those claims in their opening brief on appeal. *See, e.g.*, *Ciria* v. *Gerrans*, 178 F.4th 491, 507 n.4 (9th Cir. 2026) (noting that arguments not raised by a party in its opening

brief are waived). Moreover, before the district court, appellants never argued that the common-law claims should be cognizable because of the ATS, and have therefore forfeited the argument for that additional reason. *See* D. Ct. Dkt. 123; *Hillis* v. *Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010) (noting that arguments made for the first time on appeal are forfeited). Appellants' effort to resurrect their common-law claims is forfeited twice over.

Appellants do not dispute that they failed to challenge the dismissal of the state-law claims on appeal or that they failed to raise their jurisdictional theory either in district court or on appeal. *See* Dkt. 117, at 2-3. They nonetheless argue that this Court can consider this argument now because "[c]ourts regularly find that when an appeals court reverses the dismissal of federal claims," state-law claims dismissed under Section 1367(c)(3) are automatically reinstated on remand. *Id.* at 3. The problem with that argument is that, here, the dismissal of appellants' federal claims was not reversed: the district court dismissed the federal-law claims, this Court reversed that dismissal, and the Supreme Court then reversed this Court. 146 S. Ct. at 1893. That means that the district court's dismissal of the federal-law claims has been upheld, and the predicate for the district court's dismissal of appellants' state-law claims remains intact.

Appellants next contend that the Supreme Court's decision in this case "caus[ed] a change in law sufficient to justify" consideration of their arguments now. Dkt. 117, at 3. According to appellants, they "relied on Supreme Court precedent interpreting the ATS to permit federal courts to create causes of action" and the reversal of that precedent "fundamentally upset" that reliance. *Id.* at 4. Appellants' request for a do-over should be rejected.

The Supreme Court's decision in *Cisco* narrowed, rather than broadened, the ATS's reach. It therefore provides no basis for a new argument about the power of the ATS to authorize private plaintiff litigation in federal court. Nor does the case appellants invoke help their cause. *See* Dkt. 117, at 3-4. In *United States* v. *Thomas*, 726 F.3d 1086 (2013), this Court permitted a criminal defendant to advance a trespass-based theory of a Fourth Amendment violation for the first time on appeal. *Id.* at 1092. But it did so because the Supreme Court "changed the jurisprudential landscape" by holding in *United States* v. *Jones*, 565 U.S. 400 (2012), that the reasonable-expectations-of-privacy test "was not the exclusive rubric" for assessing Fourth Amendment violations. *Thomas*, 726 F.3d at 1092. The *Jones* decision expanded the arguments available to defendants, and so excused the forfeiture. But the Supreme Court's decision in this case did no such thing: it declined to "disturb *Sosa*'s holding that the ATS is a jurisdictional statute," and it otherwise *narrowed* the scope of the ATS. 146 S. Ct. at 1892. Indeed, appellants themselves

admit that the Supreme Court "did not address" the issue they seek to raise now. Dkt. 111, at 1-2. Nor, in any event, does *Thomas* support the far broader excuse for a forfeiture that appellants would need here: there, the criminal defendant was seeking to make a new, property-based argument in support of a consistent claim that the fruits of his search should be suppressed. *See* 726 F.3d at 1087, 1092. Here, by contrast, appellants are seeking to appeal, for the first time on remand from the Supreme Court, the dismissal of claims that they previously chose not to appeal on any ground.

Appellants contend that they relied on *Sosa*'s suggestion that new causes of action could be available under the ATS in forgoing the appeal of the state-law claims. Dkt. 111, at 6-7; Dkt. 117, at 4. But that is no excuse for forfeiture, particularly in the face of a district-court decision dismissing *all* of their claims. What is more, appellants' assertion of reasonable reliance itself contradicts the Supreme Court's decision in this case. The Court explained that it is "hard to see how correcting *Sosa*'s unfulfilled prediction [of future causes of action under the ATS] would upset reliance interests." 146 S. Ct. at 1891-1892. The Court had "never—not once—created an ATS cause of action" and, "given the 'high bar' that *Sosa* set," it was "a stretch to believe that [the Court] ever would have." *Id.* at 1892. At a minimum, appellants could not have believed that the viability of their ATS claims was free of doubt. Their choice

not to raise their alternative jurisdictional theory earlier is therefore confounding—and does not warrant dispensing with normal preservation principles, especially at this late stage.

## II. Reopening The State-Law Claims Would Contravene The Scope Of The Supreme Court's Remand

Even aside from the normal operation of forfeiture principles, reopening the dismissed state-law claims would contravene the scope of the Supreme Court's remand. Here, the Supreme Court "reversed" the judgment of this Court, which had reversed the district court's dismissal of the case, and remanded "for further proceedings consistent with this opinion." 146 S. Ct. at 1893. On remand, this Court "must implement both the letter and the spirit of the mandate, taking into account the [Supreme Court's] opinion and the circumstances it embraces." *Montana* v. *Talen Montana, LLC*, 130 F.4th 675, 691-692 (9th Cir. 2025). Affirming the district court's decision necessarily requires denying appellants' late-breaking request to reexamine the validity of their state-law claims. *See Doe* v. *Nestle SA*, 4 F.4th 706 (Mem.) (2021) (affirming without opportunity to amend, "[i]n accordance with the United States Supreme Court's opinion").

Indeed, it is well established that a remand does not extend to reconsidering issues waived or forfeited when the case was previously before this Court. Courts of appeals have "consistently held" that the scope of a remand

does not extend to "issues that were waived or forfeited at the initial appeal." *Alaska Department of Fish & Game* v. *Federal Subsistence Board*, 139 F.4th 773, 788 (9th Cir. 2025) (alterations and citation omitted); *see Doe* v. *Chao*, 511 F.3d 461, 465 (4th Cir. 2007); *Medical Center Pharmacy* v. *Holder*, 634 F.3d 830, 834 & n.2 (5th Cir. 2011); *United States* v. *Husband*, 312 F.3d 247, 250 (7th Cir. 2002); *Estate of Cummings ex rel. Montoya* v. *Community Health System, Inc.*, 881 F.3d 793, 801 (10th Cir. 2018); *Doe* v. *United States*, 463 F.3d 1314, 1327 (Fed. Cir. 2006); *see also* 18B Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4478.6 n.21.50 (3d ed. April 2026 update) (Wright & Miller). That rule "forecloses litigation of issues decided by the district court but foregone on appeal." *United States* v. *Bell*, 5 F.3d 64, 66 (4th Cir. 1993).

That rule is based on sound principles of judicial economy. "Repetitive hearings, followed by additional appeals, waste judicial resources and place additional burdens . . . on hardworking district and appellate judges." *United States* v. *O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003). Further litigation also undermines "the interests of consistency and finality." *Alaska Department of Fish & Game*, 139 F.4th at 789. Those considerations are particularly acute here, where appellants filed their complaint over fifteen years ago and litigated it exclusively on the theory that the ATS confers authority to create

federal causes of action. Further litigation would prejudice appellees by "negating [their] . . . victory and potentially requiring another round of . . . briefing." *Hartzell* v. *Marana Unified School District*, 130 F.4th 722, 745 (9th Cir. 2025).

**III. Appellants' New Theory Of Jurisdiction Over The State-Law Claims Is Wrong**

Even if there were remaining state-law claims to resolve in this case, and even if the argument were within the scope of the Supreme Court's remand, appellants' theory of jurisdiction lacks merit. Appellants' argument for further proceedings turns on the assertion that the federal courts have jurisdiction over their state-law claims alleging violations of the law of nations. That request flouts basic principles of Article III, as well as the letter and the spirit of the Supreme Court's decision in this case.

Indeed, appellants admit that they are "unaware of any court" that has "held that the ATS confers jurisdiction over state-law claims that also constitute violations of international law." Dkt. 117, at 4. Little wonder. Appellants' theory, if adopted, would violate Article III. Appellants contend that the ATS authorizes jurisdiction (regardless of diversity) over "causes of action [that] exist under state law." *Id.* at 2. But the Supreme Court has repeatedly held that federal statutes that do "nothing more than grant jurisdiction over a particular class of cases" are not sufficient to raise a federal question for purposes

of Article III. *Verlinden B.V.* v. *Central Bank of Nigeria*, 461 U.S. 480, 496 (1983). And "Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution." *Id.* at 491.

Appellants nonetheless contend that their theory of ATS jurisdiction satisfies *Verlinden* because there the Court held that the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1330, comports with Article III. *See* Dkt. 117, at 1-2. Appellants misread *Verlinden*. The Court held that FSIA satisfies Article III because "Congress expressly exercised its power to regulate foreign commerce" by "se[tting] forth comprehensive rules governing sovereign immunity." 461 U.S. at 496. The ATS is, by contrast, a purely jurisdictional statute—a conclusion that is all the clearer after the Supreme Court's decision in this case. *See* 146 S. Ct. at 1889.[1] This Court has read *Verlinden* just this way, recognizing that a grant of jurisdiction "alone is not sufficient to confer

[1] As previously interpreted by this Court, the ATS would have satisfied the *Verlinden* test because it required threshold determinations as a matter of "federal common law" as to "whether there is an applicable norm of international law, whether it is recognized by the United States, what its status is, and whether it was violated in the particular case." *See In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 978 F.2d 493, 502-503 (9th Cir. 1992). But in light of the Supreme Court's decision in this case, no federal-law inquiry remains. *See* 146 S. Ct. at 1889.

jurisdiction within constitutional bounds." *Proctor* v. *Vishay Intertechnology Inc.*, 584 F.3d 1208, 1220 (9th Cir. 2009).[2]

And beyond the profound Article III problems, appellants offer no support for reading the ATS to address state-law violations that overlap with violations of the law of nations. Although the debate about whether the ATS itself creates any federal causes of action has been going on for decades, appellants have not cited a single court that has read the ATS that way. Indeed, appellants' theory would, in effect, read the ATS to allow private causes of action in federal court for violations of the law of nations. Yet that is exactly what the Supreme Court rejected in *Cisco*. The Court held that it is for the "political branches or other international actors," and not "U.S. courts," to provide redress for violations of the law of nations. 146 S. Ct. at 1893. ATS cases "by their nature implicate foreign policy," and "Congress is better positioned than

[2] Appellants suggest that Article III can reach purely jurisdiction-conferring statutes under a theory known as "protective jurisdiction." Dkt. 117, at 1. As courts have recognized, that theory is "unsupported by case law and is largely a matter of academic interest." *Maryland* v. *Exxon Mobil Corp.*, 352 F. Supp. 3d 435, 448 (D. Md. 2018). To the extent the Supreme Court has addressed the theory, it has warned that it would "present grave constitutional problems." *Mesa* v. *California*, 489 U.S. 121, 137 (1989) (construing the federal-officer removal statute, 28 U.S.C. § 1442(a), to require a colorable federal defense). This Court has never accepted the theory. And it is "difficult to believe that the [Supreme] Court would accept . . . proposals for protective jurisdiction." 13D Wright & Miller § 3565. Any effort to reinterpret the ATS to grant authority over state-law claims based on protective jurisdiction accordingly lacks merit.

courts to evaluate the policy tradeoffs of creating liability." *Id.* at 1890-1891. The Court thus "[s]hut[] off the possibility of additional ATS liability." *Id.* at 1892 n.2. Appellants' theory would simply resurrect the private cause of action that *Cisco* rejected in the guise of applying state law.

* * *

The Supreme Court has closed the door on appellants' case. Further proceedings are not warranted. This Court should make that clear and affirm.

## CONCLUSION

This Court should enter judgment affirming the district court's dismissal of this case.

Respectfully submitted,

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM
MASHA G. HANSFORD
JAKE L. KRAMER
DAVIS POLK & WARDWELL LLP
*1050 17th Street, N.W.*
*Washington, DC 20006*
*(202) 962-7000*
*kshanmugam@davispolk.com*

SEPTEMBER 2, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Kannon K. Shanmugam, a member of the Bar of this Court and counsel for appellees Cisco Systems, Inc., John Chambers, and Fredy Cheung, certify, pursuant to Federal Rule of Appellate Procedure 32(g) and the Court's August 12, 2026 order, Dkt. 120, that the attached Supplemental Brief of Appellees is proportionately spaced, has a typeface of 14 points or more, and contains 3,741 words.

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM

SEPTEMBER 2, 2026